**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Larry RAY, Defendant-Appellant.**

**No. 81–2262.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1982.

Decided July 26, 1982.

Rehearing and Rehearing En Banc
Denied Oct. 1, 1982.

---

Ronald D. Spears, Miley, Meyer, Austin & Spears, Taylorville, Ill., for defendant-appellant.

R. Mark Mifflin, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before PELL, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and ESCHBACH, Circuit Judge.

PELL, Circuit Judge.

The appellant, John Larry Ray, was charged in a four count indictment with two counts of bank robbery and with receipt and possession of a firearm by a convicted felon.[1] In preparing for trial, the Government had filed a motion to compel the appellant to provide handwriting samples, which motion was granted by the court in an order dated February 27, 1981. On March 16, 1981, the court commenced a jury trial on the issue of whether the appellant should be found in contempt under Federal Rule of Criminal Procedure 42(b) and 18 U.S.C. § 401 (1976) for having refused to provide the handwriting samples. The jury found the appellant guilty of contempt, and on July 28, 1981, the court sentenced the appellant to three years in the custody of the Attorney General to be consecutive to any other sentence previously imposed. The appellant is appealing his conviction, asserting that: (1) the district court considered improper factors in imposing its sentence; (2) the district court abused its discretion in imposing a three year sentence; (3) the prejudicial comments of the trial judge to the jury denied him his right to an impartial jury; (4) the court did not give him adequate notice of the charges and a reasonable time to prepare his defense; (5) the court erred in excluding from the jury evidence of his good faith compliance with the court's order; and (6) the court's instructions to the jury denied him his right to a jury trial and due process of law.

I. Statement of Facts.

On January 16, 1981, the appellant was indicted for bank robbery and possession of a firearm by a convicted felon. Previously, on July 18, 1980, he had given handwriting samples to Illinois law enforcement officials

---

1. On March 24, 1981, the firearms charge was severed from the bank robbery charges, with the latter to go to trial first.

in connection with the bank robbery pursuant to a state court order. On February 25, 1981, the United States Attorney filed a motion to compel the appellant to give handwriting samples "to Special Agents of the Federal Bureau of Investigation, for the purpose of determining whether the defendant, John Larry Ray, wrote the signature 'James R. LaRue' on a vehicle title application, and 'Jerry W. Ryan' on a letter to a Quincy, Illinois auto dealer." On February 27, 1981, the district court entered an order that "[t]he above motion of the United States is hereby granted over objection of defendant." There is no record of what Ray stated by way of objection.

On March 4, 1981, FBI agents identified themselves to the appellant and informed him of the court order. They had with them an Illinois Department of Revenue Vehicle Use Tax Return form, a Vehicle Title and Registration form, and a form in letter format upon which to obtain his handwriting. They specifically told him that they were attempting to obtain his handwriting of the signatures "James R. LaRue" and "Jerry W. Ryan." The appellant told them he was "not interested" in providing the samples, and turned his back when the agents attempted to show him the court order.

On March 6, 1981, the appellant appeared in court and argued that the samples provided to the state authorities pursuant to the state court order constituted substantial compliance with the district court order, and that the Fourth Amendment protected him from being required to provide further samples. The Government attorney explained to the court that the earlier exemplars were obtained for comparison with a note found with the bank robbery money, and that the samples pursuant to the district court order were for comparison with signatures on a vehicle title application form, vehicle use tax return form, and a letter, all of which related to purchase of a vehicle abandoned in the vicinity of the bank robbery. After explaining to Ray the repercussions of his refusal to comply with the court order, the court asked him if he was still refusing to provide the samples

and he said that he was. The court scheduled a jury trial on contempt charges for March 16, 1981.

On March 12, 1981, the appellant appeared before the court for a hearing on pretrial motions in the bank robbery trial. At this time, the appellant was given oral notice of the criminal contempt trial to be held on March 16 pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure. The appellant did not object. On March 16, 1981, the Government filed an application for a show cause order, asking that the appellant be ordered to show cause why he should not be held in contempt. For the first time on the record, defense counsel objected that the court's order was too general. At this point the court showed the appellant the three forms he would be required to sign and explained the order. The appellant acknowledged that he understood the order but refused to comply. The court then entered an order directing him to show cause why he "should not be held in contempt of Court for refusing to obey the Order to Compel Handwriting Exemplars entered by the Court on February 27, 1981, and sought to be enforced on March 4, March 6, and March 12, 1981, and as made more specific in open court on March 16, 1981 and which defendant again refused to obey."

Prior to commencement of the contempt trial, the Government moved to exclude the appellant's evidence as to his purported compliance with the district court order by his having provided handwriting samples to the state authorities. Counsel for the appellant made an offer of proof for substantiating his claim that the earlier exemplars were sufficient. The Government argued that the compliance issue should have been raised prior to entry of the order, not as a defense to contempt. The Government also objected because the state exemplars did not contain the signatures sought in the district court order, and introduced a state law enforcement officer who testified that the writing in the state exemplars did not appear to be natural. The court ultimately granted the Government's motion to ex-

clude the evidence in the trial of the contempt charge.

In the trial, FBI agents testified to the appellant's repeated refusals to provide the samples. Admitted into evidence as Government exhibits were the two court orders and the forms upon which the signatures were sought. The appellant presented no witnesses, but introduced into evidence the original documents upon which were the signatures "James R. LaRue" and "Jerry W. Ryan." The jury returned a verdict of guilty of contempt of court, and sentencing was delayed at the appellant's request to await the outcome of the bank robbery trial.

On April 6, 1981, the appellant was found guilty of the bank robbery, but on April 30 the court granted the appellant's motion for a new trial based on prejudicial materials which had gone to the jury. On May 28, 1981, the appellant provided the handwriting samples sought by the district court's orders. On July 10, 1981, the jury in the second bank robbery trial returned a verdict of not guilty on the bank robbery charges. At this second trial, the appellant had testified and admitted signing the documents which had been signed "James R. LaRue." The evidence established that the appellant's brother had signed the letter with the signature of "Jerry W. Ryan." In the first bank robbery trial, an FBI agent had testified that the handwriting in the state samples was "distorted in an attempt to disguise the writing." In the second bank robbery trial, the agent testified that the handwriting samples provided on May 28, 1981, pursuant to the district court order, had also been "distorted in an attempt to disguise the writings."

In the course of the contempt sentencing hearing on July 28, 1981, the Government pointed out to the court the appellant's repeated refusals to comply, his attempts to disguise his handwriting, his shaving of his hands and wrists during the bank robbery trials when there had been testimony that the bank robber had dark hairy hands, his shouting of obscenities at a state court judge prior to the filing of the federal charges, the appellant's escape from a half-way house prior to the bank robbery, his letter to a juror after the first bank robbery trial making accusations of judicial misconduct against the court, and the twenty-five year sentence for bank robbery the appellant could have received in the bank robbery prosecutions he had attempted to thwart. The district court sentenced the appellant to three years in the custody of the Attorney General to be consecutive to any other sentence previously imposed.

## II. The Factors in Sentencing.

 Section 3577 of 18 U.S.C. provides that "[no] limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3577 (1976). A sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Information which may be permissibly considered includes criminal activities for which the defendant has not been prosecuted, illegally obtained evidence, criminal charges of which the defendant has been acquitted, and uncorroborated hearsay evidence which the defendant has had an opportunity to rebut. *United States v. Plisek*, 657 F.2d 920, 926–27 (7th Cir. 1981). There are, however, due process limitations on the degree to which the judge may rely on convictions obtained without the benefit of counsel, or convictions based on materially false or unreliable information. *Id.* at 924.

 The appellant claims that the court was precluded from considering that the defendant had shaved his hands, escaped from a half-way house, shouted an obscenity at a state court judge, and written an accusatory letter to a juror in the first bank robbery trial, because these matters were unsupported by any evidence in the record and had never been charged or

adjudicated. Clearly under *Plisek*, the court was entitled to consider these matters regardless of these objections. Moreover, all these matters were included in the presentence report and were brought out by the Government in the sentencing hearing, yet the appellant failed to object to their admission based on the inaccuracy or hearsay nature of the information. Under these circumstances, the appellant must be held to have waived any objection to their accuracy or hearsay status. *Id.* at 924–25 (7th Cir. 1981). Similarly, it was permissible for the court to consider the appellant's criminal record, including convictions he claimed were invalid, and the bank robbery charges of which he was acquitted. *Id.* at 927–28.

■ The appellant's objections to the factors considered by the court then dwindle to one single question: whether the trial court in imposing its sentence on the contempt charge gave improper weight to the bank robbery acquittal, appellant's criminal record and his alleged acts of misconduct. Review of the record of the hearing in its entirety, however, manifests that the court considered the appellant's acquittal, as well as his prior convictions and alleged acts of misconduct, only insofar as they reflected on the intent behind, and repercussions on the ongoing judicial proceedings of, the appellant's refusal to provide the handwriting exemplars.

The appellant's alleged acts of misconduct during the bank robbery trials had an immediate bearing on the appellant's intent in refusing to provide the handwriting exemplars. Counsel for the appellant had put forth the appellant's eventual acquiescence in providing the exemplars as a factor to be considered in sentencing. The judge appropriately noted that during the first trial the appellant had refused to provide the exemplars to be used to determine whether he had

signed the documents in question. During the second trial, after it had become obvious that the Government could identify the signers of the documents without the exemplars, the appellant provided the exemplars and took the stand to admit signing two of the documents showing title to the car. His admission to owning the car conflicted squarely with his accusation in the first trial that the FBI had planted his fingerprints on the car. The court appropriately concluded from the timing of the appellant's actions that the appellant had knowingly pursued this tactic to hinder the prosecution. *See United States v. Berardelli*, 565 F.2d 24, 31 (2d Cir. 1977). From our examination of the court's remarks, it is evident that the appellant's prior convictions were also factors only insofar as they buttressed the court's conclusion that the appellant was contemptuous of the court and the whole judicial process.[2]

Nor was the court's consideration of the appellant's acquittal in any sense improper. The appellant relies on certain remarks made by the attorney for the Government and by the court which purportedly demonstrate that the court sentenced the appellant to three years because the court considered the appellant to have been guilty of the bank robbery charge on which he was acquitted and for which he could have received a maximum sentence of twenty-five years. The attorney for the Government, in arguing that a substantial sentence be imposed, noted that the appellant's conduct was aimed at avoiding a sentence of twenty-five years. At one point the court noted that its "dilemma" was to determine whether it was sentencing the appellant for the possession of a gun and the bank robbery or narrowly for the appellant's conduct in relation to the handwriting exemplars alone.

Yet, immediately prior to termination of the sentencing hearing, the court stated:

> over many years, and I'm sure has been schooled in crime and things of that kind, and maybe this is the kind of thing—Mr. Ray, I don't know whether this is what they teach you in that school or not, but certainly that conduct from the Court's point of view should not be countenanced."

---

**2.** "I view that [the appellant's shaving of his hands] as somewhat contemptuous of the Court and the judicial process, and I think that the Defendant has demonstrated contempt for judicial proceedings generally, maybe—maybe it's understandable in view of his long criminal background and many, many times in the penitentiary. Mr. Ray has been in the penitentiary

[T]he jury found you not guilty, and—but my problem is what do I do at this point, and I suppose—not I suppose. I know that I am not at liberty—it would be an abuse of my discretion to sentence you for the bank robbery. Nor may I sentence you for possessing a gun by a convicted felon. Those are things that you have a right to a trial on specifically, and a right to be, if convicted, sentenced for.

Specifically as to the court's remarks on the appellant's guilt in the bank robbery charge, the purportedly objectionable remarks of the court arose tangentially in the context of the consequences of the appellant's refusal to cooperate:

The fact of the failure or the refusal of the order to give the exemplar while in—in tort law I suppose that Mr. Ray is not the proximate cause of the contaminated materials going to the jury, but if he had followed the order before the first trial, that material would not have gone to the jury, and we can only speculate what that jury's verdict would have been. There would have been no requirement for a second trial. [The prejudicial materials which went to the jury appear to be letters written by the appellant which were utilized in the first trial for purposes of analyzing the appellant's handwriting.]

The second—another good question is that I heard the evidence in this case twice. The jury in the first case found the Defendant guilty, and in the second case found the Defendant not guilty. I don't—I believe in the jury system, gentlemen. I always have. I didn't agree with the jury. I thought that the Defendant had been proven guilty beyond a reasonable doubt without reference to hair on the hand, and I'm confident that if the jury had seen the hand shaved above the coat line, the jury would have—that jury would have found the Defendant guilty, I feel, although I can't say that in [sic] any empirical evidence.

As the court's final comments quoted above make clear, the court did not impose the sentence based upon its own evaluation of the merits of the acquittals, except insofar as the acquittals may have been the result of the appellant's contumacious behavior for which he was being sentenced. Therefore, we conclude that the court was within the bounds of its discretion in its consideration of the appellant's prior convictions, alleged acts of misconduct, and the potential impact in the bank robbery case of Ray's behavior even though Ray eventually was acquitted of that charge.[3]

III. The Length of the Sentence.

■ Section 401 of 18 U.S.C. provides that a district court has the "power to punish by fine or imprisonment, at its discretion, such contempt of the authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (1976). Rule 42(b) of the Federal Rules of Criminal Procedure provides only that "[u]pon a verdict or finding of guilt [of criminal contempt] the court shall enter an order fixing the punishment." The sentence is within the discretion of the judge and is reviewable only for an abuse of that discretion. *United States v. Patrick*, 542 F.2d 381, 392–93 (7th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). The Supreme Court has directed that the sentence should reflect the "least possible power adequate to the end proposed." *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975). Although the appellate courts have a special responsibility for determining that the contempt power is not abused, *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958), great reliance must be placed on the district court's decision. *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *United States v. Patrick*, 542 F.2d 381, 392 (7th Cir.

---

**3.** We note that no inference of improper consideration of the bank robbery charges can be drawn from the court's delay of sentencing until after the conclusion of the bank robbery trials. The delay was sought *by the appellant* on March 16, 1981, and May 28, 1981.

1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

Before pronouncing the sentence, the trial court referred to the standard for imposing sentence in *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958). In pronouncing sentence, the court expressed its concern about the appellant's flagrant disregard of the court's orders and its effect on the administration of the court:

> [T]his is serious business. The orders of this Court should be obeyed. I'm sure when you—when you refused to follow the orders of the Court you didn't think it made any difference, and frankly, I—I agreed with you. I didn't think it made any difference either because I didn't think—well, I thought it was a moot question.

> Discretion is in the Court. I think that if I followed the recommendation of Government, I would be abusing my discretion. I'm not at liberty to do just whatever I want to do in circumstances like this, and in view of all the circumstances I believe that it's fair exercise of my discretion, to impose a sentence, and the sentence will run consecutive to whatever sentence Defendant is now serving or is going to serve of three years in custody of the Attorney General.

The appellate courts, and this Court specifically, have upheld sentences of similar duration for contempt convictions. *See, e.g., United States v. Berardelli*, 565 F.2d 24 (2d Cir. 1977) (five years); *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977) (four years); *United States v. Sternman*, 433 F.2d 913 (6th Cir. 1970) (per curiam) (three years); *United States v. Thompson*, 214 F.2d 545 (2d Cir. 1954), *cert. denied*, 348 U.S. 841, 75 S.Ct. 48, 99 L.Ed. 663 (four years). Although recognizing that the circumstances of each case are unique, the appellant relies heavily on *United States v. Mars*, 551 F.2d 711 (6th Cir. 1977), in which the appellate court upheld a six-month sentence imposed on the defendant for refusing to provide additional handwriting exemplars to the court. The defendant in *Mars*, however, was punished in summary contempt proceedings without a jury, for which six months is the maximum sentence. *See Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); 3 WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 712 (1969). The language of the court in *Mars*, moreover, indicates the gravity with which deliberately contumacious behavior must be regarded. In *Mars*, the court refused to reverse the contempt conviction for the trial court's failure to file the required certification under Federal Rule of Criminal Procedure 42(a) in light of "the deliberate and repeated refusal of Mars to obey a lawful order of the District Court." *United States v. Mars*, 551 F.2d at 715.

The willfulness of the appellant's disregard of the court orders was evident to the trial court. On March 4, 1981, the appellant told Federal Bureau of Investigation agents that he was "not interested" in providing the exemplars and turned his back on the agents when they attempted to show him the order. On March 6, 1981, the appellant argued that he had already complied with the order because he had provided exemplars to the state. There was testimony that the handwriting in the state exemplars had been distorted in an attempt to disguise the handwriting. On March 6 and 12, the court explained the order and offered the appellant the opportunity to comply and purge himself of the contempt. He refused. For the first time on the record on March 16, the appellant argued that the order was too general. The court again explained the order, and showed the appellant the forms he would be required to sign. The appellant again refused. The appellant did not provide the exemplars until May 28, 1981, after the Government had been able to identify the persons who had signed the documents in question in the first bank robbery trials. An expert witness testified in the bank robbery trials that these handwriting samples were also distorted. From this evidence, the court concluded that the appellant had deliberately refused to provide the exemplars until the Government's indepen-

dent ability to identify the signers of the documents had been demonstrated, at which point he provided distorted handwriting examples.

Buttressing the court's conclusion that the appellant was disdainful of the court and judicial process was the evidence of the appellant shaving his hands, of writing to a juror in the first trial making accusations of corruption against the court, of his escape from a half-way house, of his shouting of obscenities at a state court judge, and of his possession of a gun as a convicted felon while escaping from the half-way house. The court was in a unique position to judge the deliberate contumaciousness of the appellant's behavior, having seen his behavior in three separate trials. Although the parties devote much of their argument to whether or not the appellant's behavior actually thwarted the Government's prosecution, the validity of a sentence for contempt does not turn solely on the relative success or failure of a party's deliberate refusal to comply with a lawful court order. Under the criteria set forth in *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), the "seriousness of the consequences of the contumacious behavior" is only one of the factors to be considered along with "the extent of the willful and deliberate defiance of the court's order . . . , the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future." Given the evidence of the appellant's deliberate refusal to provide the exemplars, and the necessity and importance of terminating and deterring such conduct designed to impede the judicial process, the sentence was within the bounds of the trial court's discretion.

IV. The Trial Court's Comments to the Jury.

In the trial court's opening remarks to the pool of prospective jurors, the court explained the charge as follows:

> The Court has ordered Mr. Ray to give to the Government handwriting samples,

handwriting exemplars, and he has refused to do it. That's what we're here today for you to determine.

Shortly afterwards, the court remarked to the jurors:

> This case is a contempt of court is the charge. Mr. Ray is—has been indicted for a criminal offense in this Court, and in that case was ordered by me, by the Judge of this court, to give certain handwriting samples to the Government. I believe the evidence will show that Mr. Ray has refused to do that, and if you find those things beyond a reasonable doubt, that constitutes the charge.

The appellant then moved for a mistrial. The court denied the motion, and then gave the following cautionary instruction:

> Ladies and gentlemen, let me modify what I said. I don't want you to think what I am saying is evidence.
>
> Whether or not I ordered Mr. Ray to do what I told you and whether or not he refused, that's a question you're going to have to find from the evidence. I'm telling you—and by the way, that gets me to another general cautionary thing.
>
> Jurors are the sole judges of the facts in all cases. That's our jury system. You listen to the evidence, and you decide what the facts are. Nothing I say or do in this case will be intended by me to be any indication to you what the facts are, and you should not take anything I say or do to be any indication of what I think the facts are. You are the sole judges of the facts. You're going to decide them, and in most cases there is a dispute about the facts. You listen to the evidence. You listen to the witnesses, and that's the way you decide it.

The judge then went on to explain that he was the sole judge of the law, but that only the jury could decide the facts. At the conclusion of the trial, the court again instructed the jurors that they were the sole triers of the facts, and that the court did not mean by any instruction, ruling or remark to indicate any opinion as to the facts or as to what the verdict should be. De-

spite these cautionary instructions, the appellant contends that the judge's opening remarks were so prejudicial that the appellant was denied an impartial jury.

■ As to the court's comment that it believed the evidence would show that the appellant refused to provide the samples, we find no reversible error. The judge may comment on the evidence if he clearly instructs the jury that they are the sole trier of facts and are not bound by his comments. *See, e.g., United States v. Carlos,* 478 F.2d 377 (9th Cir. 1973); 2 WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 488, at 305 (1969). The court's remark in explaining the charge was not tantamount to an expression that the appellant was guilty of contempt, *compare United States v. Murdock,* 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), or the giving of an instruction against the appellant on a material fact, *compare United States v. Lee,* 483 F.2d 959 (5th Cir. 1973) (per curiam). Any prejudicial effect from this remark was cured by the court's repeated cautionary instructions. *See, e.g., United States v. Bukowski,* 435 F.2d 1094 (7th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971).

The court's initial remark that the appellant had refused to provide the samples is concededly more troublesome. In context, however, the statement was made in explanation of the charge to the pool of potential jurors. Contempt proceedings such as these pose a somewhat different situation for evaluating the prejudicial effects of a court's remarks as compared to other criminal proceedings which are initiated by a grand jury indictment. In these contempt proceedings, initiation of the proceedings was based in part on the information and belief of the court which instructed the Government attorney to file the necessary papers to bring the appellant to trial on contempt charges. The court signed the order for a hearing to show cause why the appellant should not be held in contempt. It is evident from the very nature of these proceedings that the court believed that the appellant had refused to provide the samples mandated by its order. Under these circumstances, the court's remark as to the appellant's refusal, with the cautionary instruction, is analogous to a court's reading of the indictment to a jury while cautioning that the information contained in the indictment is not evidence. Given the nature of these contempt proceedings, and the repeated cautionary instructions, therefore, we find no reversible error in any of the trial court's comments. *Cf. id.* at 1109.

## V. Notice of the Charges and a Reasonable Time to Prepare the Defense.

The appellant objects to the district court's commencement of the contempt trial shortly after it had amended its order on March 16, 1981. The appellant claims the court's conduct denied him adequate notice of the charges and a reasonable time to prepare his defense in violation of Rule 42 of the Federal Rules of Criminal Procedure and the requirements of due process. Rule 42(b) provides that criminal contempt shall be prosecuted "on notice," which notice must allow "a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." What constitutes a "reasonable time" is generally left to the discretion of the district court. *Nilva v. United States,* 352 U.S. 385, 395, 77 S.Ct. 431, 437, 1 L.Ed.2d 415 (1957). Under the Rule, the notice may be given orally by the judge in open court in the presence of the defendant or by an order to show cause upon application of the United States attorney. In the present case, the appellant was fairly and completely apprised of the events and conduct constituting the contempt charged, not only from the court's papers served on him but also by virtue of what transpired in the court proceedings. Moreover, actual notice is highly relevant in a determination of whether there was compliance with the Rule. *United States v. Eichhorst,* 544 F.2d 1383 (7th Cir. 1976).

The Government's motion to compel handwriting exemplars required the appellant "to given handwriting exemplars to Special Agents of the Federal Bureau of Investigation, for the purpose of determining whether the defendant, John Larry Ray, wrote the signature 'James R. LaRue' on a vehicle title application, and 'Jerry W. Ryan' on a letter to a Quincy, Illinois auto dealer." On February 27, 1981, the court granted the order over the appellant's objection. On March 6, the court reiterated the requirement of the signatures and set the contempt trial for March 16. No objection was made to the specificity of the order. On March 12, the district court orally advised the appellant of the notice requirements of Rule 42(b) concerning the February 27, 1981 order. The appellant had no objections to the adequacy of the notice. On March 16, 1981, the government filed its application for a show cause order. For the first time on the record, counsel for the appellant objected that the February 27 order was too general. The court then showed the appellant the three forms to be signed "James R. LaRue" or "Jerry W. Ryan" and added to the February 27 order the phrase "and as made more specific in open court on March 16, '81 and which Defendant again refused to obey." The three forms were incorporated as part of the record. No motion for reconsideration of the order was made.

■ The appellant was clearly given sufficient notice and a reasonable time to prepare for the contempt proceedings. The notice had only to state the essential facts constituting the criminal contempt charge, and the appellant voiced no objections to its adequacy on March 12. The court's amendment on March 16 did nothing other than include the three specific forms which had been presented to the appellant on March 4 and upon which the appellant was to sign the two signatures. The appellant would have had actual notice of the forms to be signed on March 4 had he not turned his back on the FBI agents. Formal notice of the specific forms upon which the two signatures were to be obtained was not necessary for preparation of any good faith compliance defense when the appellant had specific notice of what signatures he would be required to provide. As the March 16 amended order had no substantive effect for purposes of preparing a defense, and the formal notice on March 12 of the underlying order was without objection, commencement of the contempt proceedings on March 16 did not violate Rule 42(b) or the requirements of due process.

## VI. Exclusion of Evidence of Good Faith Compliance.

■ The appellant claims that the trial judge erred in granting the Government's motion *in limine* preventing him from introducing evidence of his good faith compliance with the court's order. A good faith effort to comply with a court order tends to negate willfulness, an element of criminal contempt which must be proven beyond a reasonable doubt. *See, e.g., United States v. Greyhound Corporation*, 508 F.2d 529, 531 (7th Cir. 1974). Yet the appellant misconstrues the defense of good faith compliance as allowing the defendant in a contempt proceeding to "second guess" the necessity for the order he is charged with violating. In most instances, a defense of good faith compliance arises when a defendant has not refused to comply with the court order he is charged with violating, but has failed to comply because of the indefiniteness of the order or some other inability to do so. *See, e.g., Richmond Black Police Officers v. City of Richmond, Virginia*, 548 F.2d 123, 129 (4th Cir. 1977); *Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union*, 531 F.2d 617 (D.C.Cir.1976); *Brotherhood of Locomotive Firemen and Enginemen v. Bangor & Aroostook Railroad Company*, 380 F.2d 570 (D.C.Cir.1967), *cert. denied*, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967). In such circumstances, the defendant cannot be held willfully to have violated the order, having made every effort to comply with it.

The appellant in this case, however, never attempted to comply with the court's specific orders until after his conviction for contempt. Instead, he claimed he had complied with the order in the sense that he had given handwriting samples to the state authorities that, in his opinion, were adequate for the purposes of the federal authorities. For establishing a defense to contempt, there is a significant difference between a good faith attempt to comply with a court order and a refusal to comply because of prior compliance with a separate and distinct court order. The appellant does not contend that there was any confusion in his mind, nor could there have been, between the state court order compelling handwriting samples to the state authorities and the district court order compelling handwriting samples to the FBI for determining whether the appellant had written the signatures "James R. LaRue" and "Jerry W. Ryan." The court's order was valid, and the wisdom or necessity for the order could not constitute a defense to contempt for a refusal to comply with the order. *United States v. Bukowski*, 435 F.2d 1094, 1108 (7th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). Therefore, the appellant's offer of proof for a good faith defense was clearly insufficient as a matter of law, and the district court did not err in the occlusion of the proposed evidence. As the court noted, the evidence could relate only to the validity of the underlying order or mitigation of the sentence, but could not excuse the appellant's refusal to comply with the order.

## VII. The Court's Instructions to the Jury.

The appellant objects to the following instructions given by the court to the jury:

> You are instructed as a matter of law that the order to compel handwriting exemplars entered in this case is a valid Court order.

> A person who has been ordered by a court to give handwriting samples has no legal right to knowingly and willfully refuse.

Shortly before giving these instructions, the court had instructed the jury:

> To sustain the charge of Contempt of Court, the government must prove the following propositions:

> First: A Court in the United States issued a lawful order.

> Second: The defendant knowingly and willfully disobeyed or resisted said lawful order.

 In determining the propriety of instructions they are to be viewed as a whole, and as long as the instructions treat the issues fairly and adequately they will not be interfered with on appeal. *United States v. Patrick*, 542 F.2d 381, 389 (7th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). As the validity of the court's order was not a question for the jury in the contempt proceedings, the court's instruction that the order was a valid court order as a matter of law is not reversible error. *United States v. Bukowski*, 435 F.2d 1094, 1108 (7th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). The court's instruction that a person has no legal right "knowingly and willfully" to refuse to comply with an order to provide handwriting samples must be considered together with the court's instructions on the meaning of "knowingly" and "willfully":

> When the word "knowingly" is used in these instructions, it means that the Defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake or accident.

> An act is done "willfully" if done voluntarily and intentionally with a purpose of avoiding a known legal duty.

These instructions properly advised the jury of the showing of intent necessary for the jury to find the appellant guilty of contempt. *See, e.g., United States v. Patrick*, 542 F.2d 381, 389 (7th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

For the above-stated reasons, therefore, the conviction of the appellant is

AFFIRMED.