IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 1, 2018

## RENEE ANN BRADLEY v. RICHARD BRADLEY

**Appeal from the General Sessions Court for Morgan County**
**No. 15-DV-19      Michael A. Davis, Judge**

_____

### No. E2017-01626-COA-R3-CV

_____

A husband and wife were divorced in 2016, and the divorce decree permitted the husband to purchase the parties' real property, which was in the wife's name. The parenting plan provided the parties the opportunity to travel domestically or abroad with their minor son. The husband filed a contempt petition against the wife based on her refusal (1) to provide information to his lender that was necessary for him to close on the purchase of the property and (2) to cooperate with him to renew their child's passport when the husband wanted to travel with the child to Europe. The trial court found the wife in contempt on both grounds and awarded the husband damages. The wife appealed, arguing that she was not willful in refusing to cooperate with the husband's lender. The evidence showed that the wife believed the husband was trying to refinance her loan and add his name to her deed rather than purchase the property outright. We hold that the trial court erred in finding the wife willfully disobeyed the court's order that she cooperate with the husband's lender. We affirm the trial court's order holding the wife in contempt for failing to cooperate with the husband in renewing the child's passport.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Jeffrey Vires, Crossville, Tennessee, for the appellant, Renee Ann Bradley.

James William Brooks, Jr., Wartburg, Tennessee, for the appellee, Richard Bradley.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Renee Ann Bradley ("Wife") and Richard Bradley ("Husband") were granted a divorce on July 27, 2016. The parties entered into a Marital Dissolution Agreement ("MDA") that the trial court made a part of its final decree of divorce. The parties had one child who was still a minor at the time of the divorce. The parties submitted a permanent parenting plan to the court, and the court approved the parenting plan and incorporated it into the final decree.

The MDA provided that the parties would sell their real property, which was in Wife's name, and distribute the proceeds between them. The parties later decided to amend the MDA to allow Husband to purchase the real property from Wife. The trial court entered an Amended Final Decree of Absolute Divorce on September 6, 2016, *nunc pro tunc* for July 27, 2016. As amended, the MDA included the following paragraph:

> Husband will have three (3) weeks from the date of this Agreement to qualify for a loan to purchase the property from Wife. If Husband purchases the property, he must pay off the indebtedness to Farm Credit Services, pay Wife Twenty-Five Thousand Dollars ($25,000.00), and pay Wife the difference between One Hundred Twenty Thousand Dollars ($120,000.00) and the actual payoff to Farm Credit Services if the payoff is less than One Hundred Twenty Thousand Dollars ($120,000.00).

The permanent parenting plan included a provision regarding the child's travel, domestically and abroad. It stated:

> There will be no restriction on travel, domestic or abroad, with the minor child by either parent. However, both parents must follow the notice provisions before going abroad with the minor child.

Husband filed a contempt petition on October 5, 2016, alleging that Wife was refusing to cooperate with his lender to conclude the financing transaction and allow him to purchase the real property that was in Wife's name. Husband amended his petition on March 7, 2017, to add another ground for contempt after Wife refused to cooperate with him to renew their child's passport. Husband asserted that Wife's refusal constituted a violation of the provision of the parenting plan, quoted above.

The trial court conducted a trial on August 4, 2017, and both Wife and Husband testified. The evidence revealed that Wife had a mortgage on the real property through Farm Credit Services, and Husband was working with RedRock Mortgage ("RedRock") to obtain a loan and purchase the property from Wife. The record shows that Husband

was in a position to close on the property by the end of August 2016 but that Wife would not cooperate with RedRock and refused to provide information it requested from her.

Wife testified that she was contacted by RedRock, and she believed that, rather than purchasing it outright, Husband was trying to refinance her loan by having his name added to her name on the deed to the property. Wife was aware of a federal lien against Husband that predated the parties' marriage, and Wife was concerned that her interest in the property could be negatively affected if Husband's name was added to the deed along with her name. Wife did not understand that RedRock was working with Husband to transfer the deed from her to him. When RedRock asked Wife for her payment history with Farm Credit Services, she refused to provide the requested information. Wife was questioned by Husband's attorney and testified as follows:

Q: [Husband] had been approved for a loan, correct?

A: He was approved for something that I would have had to sign him onto a deed for the property.

Q: Ma'am, you would have - -

A: And that would have taken months.

Q: You would  - - ma'am, you would have just had to sign a deed conveying the property to him at closing, wouldn't you?

A: No. It would have been - -  there would have been a discrepancy in the - - in the exchange of moneys at closing, because I would - - he would have been on the deed of the property for - - they said it could take months to get all of that approved. And I didn't want that, because that made - - that made it an issue for me.

Wife testified that she believed she "would have stayed an owner of the property with his name on the deed until a loan was closed," and that this could take months. In support of this belief, Wife described a conversation she had with a representative of RedRock:

She said, "You're not going to be happy about this." And she said, "This is - - this is not a purchase. You're  - - you're going to have to sign his name onto the deed. And it could take up to a couple of months, okay, to get his name on that deed. And during that time, if something were to happen to you or anything, that that property, it would be an issue at that point."

The record reveals that Husband asked Wife to sign a purchase agreement in September 2016 but that she did not sign an agreement until October, and that the closing

on the property did not take place until December 2016. Husband testified that the delay in closing required him to pay for an additional appraisal and to pay additional fees because the interest rate rose during the period of delay.

Husband and Wife also testified about Wife's refusal to cooperate with Husband to have their child's passport renewed. Wife acknowledged that she refused to sign the form Husband presented her or go with him to apply for a passport in person. Wife testified that she was afraid Husband would take the child to the Czech Republic, which is where Husband was born, and that Husband would not bring the child back to the United States. Wife testified:

> Because of his history, I was worried that if something happened again with the law, because I have no contact with him, he has stated he will never go to prison, okay? And right now, he does have a federal felony. If something were to happen, he would be - - he would end up - - they would come after him, take him to prison, whatever. He said he would never go. So he would take my son. I was afraid he would take my son out of this country and they would disappear. I would never see him. He's been threatening that since he was born.

Wife explained that she did not object to the child's traveling with Husband to see Husband's mother, but she refused to cooperate with Husband to renew the child's passport without a court order allowing her to hold onto the passport until Husband needed it.[1]

Following the close of evidence, the trial court announced it was holding Wife in contempt on both issues. The court issued an order on August 9, 2017, that included the following findings:

> 2. That Petitioner obtained approval within the three week window permitted by the AMENDED FINAL DECREE OF ABSOLUTE DIVORCE.
>
> 3. That Respondent willfully failed to cooperate with Petitioner and Petitioner's lender between the date of approval and closing of Petitioner's loan.
>
> 4. That the Respondent willfully failed to sign documents which were needed by Petitioner or Petitioner's lender in order to finalize the loan.

---

[1]Wife admitted that she had not filed anything with the court seeking to modify the parenting plan to include such a provision.

5. That Petitioner incurred damages as a result of the delay occasioned by the willful conduct of Respondent.

6. That the Respondent should be found to be in contempt of court and damages should be awarded to Petitioner.

7. That the PERMANENT PARENTING PLAN signed by the parties and incorporated into the FINAL DECREE OF ABSOLUTE DIVORCE on July 27, 2016 was an Order of the court.

8. That the provisions of the PERMANENT PARENTING PLAN ORDER regarding foreign travel by the parties with their minor child were stated as follows:

> "J. OTHER
>
> The following special provisions apply: There will be no restriction on travel, domestic or abroad, with the minor child by either parent. However, both parents must follow the notice provisions before going abroad with the minor child."

9. That the Respondent failed to abide by the provisions of the PERMANENT PARENTING PLAN because she willfully failed to cooperate with Petitioner in obtaining renewal of the passport of the minor child of the parties by either accompanying Petitioner to apply for renewal of the passport or sign the STATEMENT OF CONSENT as the non-applying parent.

10. That the willful failure of Respondent to cooperate with Petitioner has delayed Petitioner's efforts to renew the passport of the minor child and, therefore, has placed a restriction on the ability of Petitioner to travel abroad with the minor child.

11. That Respondent should be found to be in contempt for her failure to cooperate with Petitioner in his efforts to renew the application of the passport of the minor child.

12. That the Respondent has incurred attorney's fees and expenses in pursuing his AMENDED PETITION against Respondent.

13. That Petitioner should be awarded his attorney's fees and expenses, it is

ORDERED, ADJUDGED and DECREED as follows:

- 5 -

A. That the Respondent, Renee Ann Bradley, shall be found to be in contempt of court for her failure to cooperate with Petitioner and Petitioner's lender.

B. That the Respondent shall be found to be in contempt of court for her failure to cooperate with Petitioner in his efforts to obtain renewal of the passport of the minor child.

C. That the Petitioner shall have judgment against Respondent for the additional expenses he incurred as a result of the failure of Respondent to cooperate with Petitioner and Petitioner's lender in the amount of $3,593.32, for which execution shall issue if necessary.

D. That Petitioner shall have judgment against Respondent for attorney's fees and expenses incurred by Petitioner in pursuing his AMENDED PETITION in the amount of $1,967.80, for which execution shall issue if necessary.

E. That the Respondent, Renee Ann Bradley, shall execute the STATE OF CONSENT: ISSUANCE OF A U.S. PASSPORT TO A MINOR UNDER AGE 16.

F. That the Petitioner, Richard Bradley, shall be authorized to apply for the renewal of the U.S. passport for his minor child, Richard Louis Bradley, who is under age 16 and the presence of the minor child's mother, Respondent, Renee Ann Bradley, shall not be required.

Wife appeals the trial court's judgment finding her in contempt of court.

## II. ANALYSIS

The Tennessee General Assembly has authorized courts to "inflict punishments for contempts of court" in cases where a party willfully disobeys "any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3). The basis of Husband's claims against Wife was that Wife had failed to comply with the court's orders as set forth in the final decree of divorce, which incorporated the MDA and the permanent parenting plan. Husband did not specify in his petition whether he was seeking to have the court hold Wife in civil contempt or criminal contempt. The Tennessee Supreme Court has addressed contempt and the differences between civil and criminal contempt:

[A] contempt may either be civil or criminal in nature. Civil contempt occurs when a person does not comply with a court order and an action is

brought by a private party to enforce rights under the order that has been violated. Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights. Also, in civil contempt cases, the quantum of proof necessary to convict is a preponderance of the evidence. On the other hand, criminal contempts are "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." Punishment for criminal contempt is both punitive and unconditional in nature and serves to adjudicate "an issue between the public and the accused." In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt.

*Doe v. Bd. of Prof'l Responsibility of Sup. Ct. of Tenn.*, 104 S.W.3d 465, 473-74 (Tenn. 2003) (citations omitted); *see also Long v. McAllister-Long*, 221 S.W.3d 1, 12-13 (Tenn. Ct. App. 2006) (stating primary purpose of criminal contempt sanctions is to punish and vindicate court's authority); TENN. R. CRIM. P. 42(b) (setting forth notice requirements for criminal contempt).

The words "criminal contempt" do not appear in Husband's initial petition or amended petition, and Husband seems to have filed his petition for the purpose of requiring Wife to comply with the terms of the MDA and parenting plan. Therefore, it appears Husband was seeking to have Wife held in civil contempt.

To succeed on a claim seeking civil contempt, a plaintiff must prove "four essential elements." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008). These elements include:

First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Id.* at 354-55 (footnotes omitted). A party may be held in civil contempt for violating a court's order even if the contemptuous conduct has ceased by the time of the hearing. *Overnite Trasnp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 511 (Tenn. 2005). We conduct a de novo review of a trial court's findings of fact in support of a decision to hold a defendant in civil contempt, according the trial court's findings a presumption of correctness unless the evidence preponderates otherwise. *Lovlace v. Copley*, 418 S.W.3d 1, 17 (Tenn. 2013) (citing *Konvalinka*, 249 S.W.3d at 356-57); *see also* TENN. R. APP. P. 13(d). We review a trial court's decision to hold a defendant in civil contempt under an abuse of discretion standard. *Id.* (citing *Konvalinka*, 249 S.W.3d

at 358). The *Konvalinka* Court addressed the abuse of discretion standard of review thusly:

> An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

*Konvalinka*, 249 S.W.3d at 358.

### Husband's Purchase of Wife's Property

Wife does not contest the legality of the MDA. Rather, she claims she "was under no obligation to assist Husband or Husband's lender in obtaining financing for the purchase of the marital home." She also claims that her non-cooperation was not "willful."

The *Konvalinka* Court discussed the second element that must be established before finding a defendant in civil contempt. The Court explained that the court order at issue must be "clear, specific, and unambiguous." *Id.* at 355. It must "expressly and precisely spell[] out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Id.*

The trial court's final decree, as amended, allowed husband three weeks to qualify for a loan to purchase the real property from Wife. Husband was directed to pay off the indebtedness to Farm Credit Services, which was Wife's lender. The MDA that Wife signed contains a paragraph that specifically requires each party, at the request of the other, to "execute and deliver all documents and records which may be reasonably necessary to give full effect to this Agreement." We disagree with Wife's assertion that she was not obligated to assist Husband in obtaining financing. To the extent that she had information or documentation that Husband or his lender needed for him to pay off Wife's loan to Farm Credit Services and/or to transfer the deed to Husband, Wife was required by the amended order and the MDA to assist Husband and his lender. This included the requirement that she give Husband or his lender information regarding the

amount still owing on her loan from Farm Credit Services. He could not comply with the terms of the amended decree without this information.

The third element of civil contempt asks whether Wife actually "disobeyed or otherwise resisted the order." *Id.* at 354-55. The evidence is undisputed that Husband was unable to close at the end of August, when he initially tried to close on the purchase, because Wife refused to cooperate with his lender. Thus, we conclude that Wife did, in fact, disobey the court's order that she comply with the terms of the MDA.

The final element Husband was required to establish before Wife could be held in civil contempt was that her refusal to cooperate and violation of the MDA was "willful." "Willful conduct" in the context of a civil contempt proceeding has been defined as:

> "acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing."

*Id.* at 357 (quoting *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006) (citations omitted)). "[A]cting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding." *Id.* (citing *United States v. Ray*, 683 F.2d 1116, 1127 (7th Cir. 1982)).

Wife testified that when she was contacted by RedRock and asked for information regarding her payment history, she believed Husband was seeking to refinance her loan, rather than pay off her loan and purchase the property outright in his own name, and that she was being asked to add Husband to her deed. Wife was aware of a federal lien against Husband, and she was concerned that her interest in the property could be impacted if the lien attached to the property before Husband closed on the purchase.

Under these circumstances, we believe the preponderance of the evidence is contrary to the trial court's finding that Wife willfully disobeyed the amended order and terms of the MDA. The record reveals that Wife did not intend to disobey the court's order. Wife understood Husband had the right to purchase her property, and she was ready and willing to sell the property to him free and clear. However, based on a conversation she had with a RedRock employee, she believed Husband was trying to refinance her loan rather than take out a new loan in his name alone. She was told by the RedRock employee, "This is not a purchase."[2] Because we find the preponderance of the

---

[2]Ultimately, Husband was able to purchase the property at issue, but this did not occur until December 2016. By that time, the interest rate on Husband's loan had risen and Husband had to pay for another appraisal on the property, causing Husband to pay more than he would have had he been able to close in

evidence does not support the "willful" element of civil contempt, we conclude the trial court lacked the basis to hold Wife in contempt for disobeying the court's order. Thus, we reverse the trial court's ruling holding Wife in contempt for failing to cooperate with Husband and his lender between the date of approval and closing of Husband's loan.

Renewal of Child's Passport

Wife does not contest the legality of the parenting plan or Husband's right to travel abroad with the child. However, she contends the trial court erred by imposing a duty upon her that was not expressly ordered under the terms of the final decree. We disagree.

The parenting plan clearly states that "[t]here will be no restrictions on travel, domestic or abroad, with the minor child by either parent." Wife testified that she understood Husband was unable to travel with the child to visit Husband's mother in Europe without a valid passport. By refusing to cooperate with Husband to apply for a passport for the child, Wife was effectively restricting Husband's travel abroad with the child. Thus, the court was not imposing a duty on Wife that was outside the terms of the final decree.

Wife does not argue that the trial court erred in finding that she acted willfully in refusing to cooperate with Husband to apply for a passport for the child. We conclude the trial court did not abuse its discretion in holding Wife in contempt for refusing to cooperate with Husband to apply for the child's passport. The court ordered Wife to execute the document giving her consent for the issuance of a passport for the child, and the record shows that Wife has complied with this order. The court further authorized Husband to apply for the passport renewal on his own, stating that the presence of Wife "shall not be required."

Damages

"[D]amages are available to a party injured by a contemnor's acts in violation of a court's order." *Overnite Transp. Co.*, 172 S.W.3d at 511 (citing Tenn. Code Ann. § 29-9-105). The trial court awarded Husband damages in the sum of $5,561.12. This amount includes $3,593.32 for expenses Husband incurred as a result of Wife's refusal to cooperate with Husband and his lender, and $1,967.80 for attorney's fees and expenses Husband incurred in pursuing his contempt petition. Because we find the trial court erred in holding Wife in contempt for refusing to cooperate with Husband and his lender between the date of the approval until the closing of the loan, we reverse all damages resulting from that ruling.

---

August.

- 10 -

The only monetary damages the trial court awarded in connection with Wife's refusal to cooperate with Husband to renew the child's passport were the attorney's fees Husband incurred in connection therewith.[3] The exhibits introduced at trial include an affidavit by Husband's attorney describing the services provided and the cost of those services. The affidavit does not specify how much time was spent on each ground for contempt, however.

We remand this case for a determination of fees Husband incurred in pursuing his contempt petition against Wife for refusing to cooperate with him to apply for a renewed passport for the child and direct the trial court to award that amount to Husband as damages.

### III. CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part. This matter is remanded for further proceedings in accordance with this opinion. Costs of appeal shall be split equally between the parties, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[3]One could debate whether the contempt was one of omission to perform a required act under Tenn. Code Ann. § 29-9-104, for which damages in the form of attorney's fees are not allowed, or one of performance of a forbidden act under Tenn. Code Ann. § 29-9-105, for which damages in the form of attorney's fees are allowed. The fact is, however, that Wife did not challenge the award of attorney's fees. She only challenged the contempt holding itself. Consequently, we deem the issue of whether attorney's fees should have been awarded as waived.