**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Barron D. FONNER,
Defendant–Appellant.**

No. 89–3054.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1990.

Decided Dec. 14, 1990.

Rodger A. Heaton, Asst U.S. Atty., Indianapolis, Ind., Richard N. Cox, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee.

Jerold S. Solovy, R. Douglas Rees, Darryl M. Bradford, Jenner & Block, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.*

EASTERBROOK, Circuit Judge.

In 1972 Barron Fonner slit the throat of Pete Lackey, a state police officer who had arrested him for a drug offense. Fonner was charged with murder, tried, and acquitted; the jury evidently accepted Fonner's contention that he acted in self defense. More than 15 years later Fonner mailed a death threat to Philip Kocis, Commander of the Illinois State Police, who worked with Lackey in 1972. Fonner also threatened to kill Chief Judge Baker of the Central District of Illinois, who sentenced Fonner in 1982 for threatening President Reagan. The two latest menacing letters produced convictions for violating 18 U.S.C. § 876, which prohibits mailing threats.

The Sentencing Guidelines apply to Fonner's crimes. Guideline 2A6.1 specifies a base offense level of 12, increased by 3 under § 3A1.2 because the threats were made against public officials. Grouping produced a 2–level increase under § 3D1.4, for a total offense level of 17. Fonner received 6 criminal history points: 3 because of his prior conviction for mailing threats, § 4A1.1(a), and another 3 because he mailed these threats within two years of his release from prison (and while under post-release supervision), § 4A1.1(d) & (e). This combination produced a guideline range of 30–37 months' imprisonment. Instead of sentencing Fonner within this range, the district judge gave him 120 months' imprisonment, the statutory maximum.

The court's order explained that Fonner's criminal history score underrepresents the seriousness of his criminal record for three reasons: (1) the killing in 1972 was not reflected in the score; (2) eight convictions for unrelated offenses also were omitted; and (3) Fonner's mental instability (he wrote the letters from a mental hospital) makes it more likely that he will commit additional offenses. From the bench, the judge added a fourth reason: Judge Baker sentenced Fonner to 10 years' imprisonment in 1982 for earlier threats, and "[t]o now sentence [Fonner] to a lesser period of imprisonment under guideline procedures would not only deprecate the seriousness of this repeat offense behavior, but also represent a disparate sentence." Fonner contends that none of these four, separately or together, justifies a sentence exceeding 37 months. He contends, indeed, that he is entitled to a sentence of fewer than 30 months because he accepted responsibility for his acts.

After the district court rendered its sentence, this court held in a series of cases that not only the fact, but also the extent, of a departure from the guidelines must be reasonable. E.g., *United States v. Schmude*, 901 F.2d 555, 559 (7th Cir.1990); *United States v. Ferra*, 900 F.2d 1057, 1061–64 (7th Cir.1990). *United States v. Scott*, 914 F.2d 959 (7th Cir.1990), the most recent, discusses the others. The district

---

\* Hon. Hubert L. Will, of the Northern District of Illinois, sitting by designation.

judge did not explain why he quadrupled the amount prescribed, the largest percentage increase we could find in cases reported in this circuit. Even if Fonner's criminal history category of III were increased to category VI, the highest at 13 or more criminal history points, the sentencing range increases only to 51–63 months, about half of what he received. As we observed in both *Schmude* and *Ferra*, a district judge may "construct" higher criminal history categories by adding 10% to 15% to the range for each new category, or alternatively by reading down the guideline table. (Movements down, to higher offense levels, are equivalent in the table to movements across, to higher criminal history categories.) To reach 120 months for a level 17 offense, the judge would have to leap from category III to "category XIII". Criminal history categories III, IV, and V span three points apiece. The real category VI starts at 13 points; "category XIII" then would be equivalent to 31 or more criminal history points.

■ Nothing in this record supports so spectacular an increase. Our review of both departures and failures to depart is deferential, *United States v. Marshall*, 908 F.2d 1312, 1326 (7th Cir.1990) (in banc), but we must ensure that the district judge attempted to make departures in line with the structure of the guidelines. If Fonner had been *convicted* of killing agent Lackey, that would have meant only three additional points, see § 4A1.1(a), and if all of the other convictions were includable they would have generated a total of four more, § 4A1.1(c). That would get Fonner only to 13, the minimum for category VI. Just as other-crime evidence cannot lead to a departure exceeding the increase that would have resulted had the defendant been charged with and convicted of the additional offenses, *Ferra*, 900 F.2d at 1063, so a defendant's past cannot justify an increase in criminal history category exceeding the level that would have been appropriate had the facts been counted expressly. The case must be remanded for resentencing more in line with the guidelines. Because issues may recur on remand, we discuss Fonner's objections to the four considerations the district judge invoked to justify departure.

■ 1. Fonner observes that he was acquitted of murdering agent Lackey and contends that a court may never take into account charges that ended in acquittal. The district judge did not conclude, however, that Fonner *murdered* agent Lackey; he struck the term "murder" from the presentence report and substituted "killed". Fonner admits taking Lackey's life; the question at trial in state court was whether he had a legal justification.

The *fact* of the knifing is relevant, if not to criminal history then to the seriousness of the threat. Fonner threatened Lackey's fellow agent. The letter to Kocis said, in part: "If I ever see Phillip A. Kocis or that Lackey (whatever he calls himself now) thing they will be dead as two rats in the hold." Evidence at the trial in 1972 implied that Fonner staged an automobile collision with Lackey in order to have the chance to confront him. The link between Lackey and Kocis makes a threat against Kocis more serious. Guideline 2A6.1(b)(1) provides: "If the defendant engaged in any conduct evidencing an intent to carry out [the] threat, increase by 6 levels." Increasing the offense level from 17 to 23 would mean increasing the presumptive sentencing range from 30–37 months to 57–71 months.

Nothing in either the guidelines or the Constitution prevents a judge from taking account of conduct in which the defendant engaged, whether or not an acquittal prevents the imposition of criminal penalties directly on that conduct. A verdict of "not guilty" does not mean that the defendant didn't do it; it means that the prosecution failed to establish culpability beyond a reasonable doubt. The facts, when properly established according to a lower standard of proof, may be used as evidence in another criminal case, *Dowling v. United States,* — U.S. ——, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), or to support civil penalties such as forfeiture. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones v. United States*, 409

U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). Sentencing judges may use all information they possess. "No limitation shall be placed on the information concerning the background, character, and conduct of a person ... for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. And the standard of proof at sentencing is a preponderance of the evidence, not "beyond a reasonable doubt". *United States v. Ebbole*, 917 F.2d 1495 (7th Cir. 1990); *United States v. White*, 888 F.2d 490, 499 (7th Cir.1989). Cf. *McMillan v. Pennsylvania*, 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986). It follows that judges may consider prior misconduct despite the defendant's acquittal on charges arising out of that misconduct. Six courts of appeals have so held under the guidelines. *United States v. Mocciola*, 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Rodriguez–Gonzalez*, 899 F.2d 177, 180–81 (2d Cir.1990); *United States v. Ryan*, 866 F.2d 604, 608–09 (3d Cir.1989); *United States v. Isom*, 886 F.2d 736 (4th Cir.1989); *United States v. Juarez–Ortega*, 866 F.2d 747, 749 (5th Cir. 1989); *United States v. Dawn*, 897 F.2d 1444, 1449–50 (8th Cir.1990). So this circuit held in pre-guideline cases. *United States v. Haygood*, 502 F.2d 166, 171 & n. 16 (7th Cir.1974) (Stevens, J.); *United States v. Cardi*, 519 F.2d 309, 314 n. 3 (7th Cir.1975); see also *United States v. Ray*, 683 F.2d 1116, 1120 (7th Cir.1982) (dictum). We conclude that these decisions are as sound today as they were before the guidelines.

Fonner depicts this as a forbidden punishment in the teeth of the earlier acquittal, but it is not. The judge's task in sentencing starts from an appreciation of the offense and offender. A defendant, convicted of making threats, who has killed before poses a problem in sentencing different from a milquetoast who utters threats out of frustration. To take account of the killing is not to "sentence" the defendant for a crime (murder) he did not commit, but to employ rational criteria to prescribe the sentence for the crime (mailing threatening communications) of which he stands convicted. Although Fonner believes that *United States v. Perez*, 858 F.2d 1272, 1277–78 (7th Cir.1988), and *United States v. Plisek*, 657 F.2d 920, 926–28 (7th Cir. 1981), preclude reliance on the facts behind an acquittal, neither case purported to overrule *Haygood, Cardi,* or *Ray.* Both *Perez* and *Plisek* remarked that because the judge had *not* relied on the facts of a charge that ended in acquittal, there was no constitutional problem. Neither case entailed, as ours does, express invocation of such facts. We hold, as *Haygood, Cardi,* and *Ray* did before us, that different burdens of proof allow a sentencing judge to enhance the penalty for a crime of which the defendant has been convicted after considering relevant conduct that did not support a verdict of guilt in an earlier trial.

2. The district judge thought that criminal history category III does not adequately reflect Fonner's background in part because eight of his convictions were omitted from the criminal history score. These are the omitted convictions: (1) in 1964 (when he was 17) Fonner pleaded guilty to a curfew violation and was fined $10; (2) in 1966 Fonner pleaded guilty to illegal possession of liquor by a minor (fined $25); (3) four months later Fonner pleaded guilty to another liquor offense and to using fireworks, illegal in New Jersey (90 days suspended plus $200 fine); (4) in 1972 Fonner pleaded guilty to disorderly conduct (fined $25); (5) in 1976 Fonner pleaded guilty to battery and theft of less than $150 (50 days in jail, with immediate release on account of time served); (6) in 1977 Fonner was convicted of battery (6 months' imprisonment, immediate release on account of time served) and committed to a mental hospital for a psychiatric examination; (7) in 1978 Fonner pleaded guilty to criminal trespass to land (probation); (8) in 1979 Fonner was charged with loitering and pleaded guilty to the lesser offense of a curfew violation (10 days' imprisonment, again with release on account of time served). In 1981 Fonner stood trial for resisting arrest; although these charges were dismissed, he was twice sentenced to 7 days in jail for contempt of court when he failed to appear.

All of these except conviction 8 and the two contempt sentences were excluded under U.S.S.G. § 4A1.2(e)(2) and (3) because they were more than 10 years old when Fonner mailed the threatening letters. Courts may reach back up to 15 years for convictions that produced sentences exceeding a year and a month, § 4A1.2(e)(1), but Fonner's were shorter. Conviction 8 and the contempt sentences were excluded under § 4A1.2(c)(1), which removes a list of petty offenses from the computation unless the sentence exceeded 30 days' imprisonment. Convictions 1, 4, and 7 were excluded under, this rule, too, and for good measure § 4A1.2(c)(2) also excluded some of his offenses.

■ According to the district judge, the exclusion of these convictions led the criminal history to understate the seriousness of Fonner's record. Ours is not, however, a case in which the defendant's record was of the sort the Sentencing Commission did not contemplate. The Commission concluded that offenses long ago, ending in small sentences, should not be counted. Fonner's eight convictions are not unprovided-for cases; they were considered and provided for expressly. Congress limited departures from the guidelines to circumstances "not adequately taken into consideration" by the Commission. 18 U.S.C. § 3553(b). The Commission's *consideration* of old convictions that produced sentences less than 13 months cannot be called "inadequate". A judge might believe that Fonner's case shows that the Commission erred, but disagreement with the guidelines is not the same thing as inadequate "consideration" by the Commission. *Scott*, 914 F.2d at 963.

Convictions for petty offenses producing sentences of 30 days or less may be counted, notwithstanding the usual rule of exclusion, if "the prior offense was similar to an instant offense". U.S.S.G. § 4A1.2(c)(1)(B). None of Fonner's offenses excludable under § 4A1.2(c) is "similar" to sending threatening letters. Section 4A1.2(e), which sets time limits, has no similar escape clause. "*Any* prior sentence not within the time periods specified above is not counted." U.S.S.G. § 4A1.2(e)(3) (emphasis added). The Commission's policy statement, § 4A1.3, giving sentencing judges latitude to depart when they conclude that the computation "significantly under-represents the seriousness of the defendant's criminal history", does not grant latitude to disregard rules specifically laid down. Instead it calls for consideration of analogous circumstances not provided for one way or the other: foreign convictions, prior sentences substantially longer than a year, prior misconduct established by civil adjudications, and prior adult conduct that did not end in a conviction. Considering such analogies increases the likelihood that similar defendants will receive similar sentences. Disregarding specific instructions in the guidelines, on the other hand, increases sentencing disparity. The eight convictions excluded by the guidelines therefore may not be the basis of an upward departure.

■ 3. Fonner needs mental care and, as the district judge stressed, may well be undeterrable. Mental health is not a solid basis on which to depart upward. U.S.S.G. § 5H1.3 bans resort to mental health except as provided elsewhere, and the only proviso, § 5K2.13, allows downward (but not upward) departures for non-violent offenses. A conclusion that the defendant is unusually likely to commit more crimes (perhaps because of mental problems) is a different matter and, in principle, could be a basis of upward departure; nothing in § 4A1.3 or elsewhere forbids its use. Still, a judge is walking on eggs, for this consideration overlaps (if it does not duplicate) the recidivism penalty built into the guidelines. Judges may not engage in double counting. *United States v. Franklin*, 902 F.2d 501, 508 (7th Cir.1990). Fonner threatened Judge Baker and Commander Kocis while under supervision from his 1982 conviction. That conviction led to three criminal history points directly, and the repeat nature of the threats produced three more under § 4A1.1(d) & (e). These 6 points increased Fonner's criminal history category from I to III, and the sentencing range from 24–30 months to 30–37 months. A belief that Fonner is likely to go on

sending threatening letters cannot support a substantial increase above this, or the limit on the recidivism penalty built into the guidelines would be defeated. Section 4A1.1(e) provides that no more than 3 points should be added for committing a fresh offense shortly after release. A departure based on a belief that the defendant is incorrigible could well be recharacterized as disagreement with this limit, and correspondingly as unauthorized.

4. Passing sentence in 1982, Judge Baker committed Fonner for 10 years. Passing sentence in 1990, Judge Moody remarked that to give Fonner less than another 10 years for renewed threats would "not only deprecate the seriousness of this repeat offense behavior, but also represent a disparate sentence." The minimum needed to avoid deprecating the seriousness of the crime is a subject for the Sentencing Commission; disparate estimates of seriousness were among Congress' principal reasons for creating the guideline system, and therefore may not be a ground of departure. As for disparity: 5 years under the guidelines may well be as severe as 10 before. There is no parole from guideline sentences, and good time credits have been cut back severely. But an effort to maintain comparability with pre-guideline sentences is not, at all events, a good reason to depart. The guidelines are meant to change sentencing practices, not to renew them. It would perpetuate the disparities that the guidelines aim to root out to use pre-guideline sentences as benchmarks for sentences under the new rules. *United States v. Brown*, 899 F.2d 94, 98–99 (1st Cir.1990).

The final subject we need consider is Fonner's argument that he is entitled to a two-point reduction in the offense level for acceptance of responsibility. After trial and at sentencing Fonner expressed remorse. But he fought tooth and nail to avoid conviction, and he refused to cooperate with the probation office's presentence investigation. "Flake off, Jack. Fuck you!", were his words to the probation officer. The district judge did not abuse his discretion in concluding that Fonner's last-minute apology was a deceitful little show.

The sentence is vacated, and the case is remanded for further proceedings consistent with this opinion.