**UNITED STATES of America**

v.

**Darrell TOLSON.**

**No. SCr. 90–47M.**

United States District Court,
N.D. Indiana,
South Bend Division.

March 19, 1991.

William Grimmer, Asst. U.S. Atty., South Bend, Ind., for U.S.

Thomas J. O'Brien, Lafayette, Ind., for Darrell Tolson.

## SENTENCING MEMORANDUM

MILLER, District Judge.

On the day his trial was scheduled to begin, Darrell Tolson pleaded guilty to participating in an extensive conspiracy to distribute, and to possess with intent to distribute, cocaine. 21 U.S.C. § 846. Mr. Tolson agreed to cooperate with investigators, and the government agreed to bring no further known charges and to dismiss five counts of interstate travel in aid of marijuana distribution, 18 U.S.C. § 1952(a)(3). Because the conspiracy extended beyond (and Mr. Tolson's participation occurred after) November 1, 1987, the United States Sentencing Guidelines ("U.S.S.G") promul-

gated pursuant to the Sentencing Reform Act of 1984 govern this sentencing. *United States v. Masters,* 924 F.2d 1362, 1369 (7th Cir., 1991); *United States v. McKenzie,* 922 F.2d 1323, 1328 (7th Cir.1991).

A presentence report was prepared and the parties were given the opportunity to object to its contents. Mr. Tolson objected only to the paragraph concerning his entitlement to a reduction in offense level for acceptance of responsibility (¶ 10). The court adopts as its own findings the factual content of paragraphs 1–9 and 11–66 of the presentence report.

### A.

The parties agree that the offense involved between 1,000 and 3,000 kilograms of marijuana, establishing a base offense level of 32. U.S.S.G. §§ 2X1.1, 2D1.1(c). Mr. Tolson contends that he is entitled to a two-level reduction in his offense level for clear demonstration of personal responsibility for his involvement in the offense of conviction under U.S.S.G. § 3E1.1(a). Mr. Tolson pleaded guilty on the day scheduled for commencement of his trial. As part of that plea agreement, he promised to cooperate with the government, testifying if necessary. Mr. Tolson bears the burden of demonstrating his entitlement to this reduction, *United States v. Camargo,* 908 F.2d 179, 185 (7th Cir.1990), by a preponderance of the evidence. *United States v. Hassan,* 927 F.2d 303, 308 (7th Cir., 1991); *United States v. Ebbole,* 917 F.2d 1495, 1496–1497 n. 4 (7th Cir.1990).

The fact of a guilty plea does not alone entitle a defendant to a reduction in offense level for acceptance of responsibility. U.S.S.G. § 3E1.1(c); *United States v. Ojo,* 916 F.2d 388, 393 (7th Cir.1990). The timeliness of a defendant's guilty plea is a pertinent, although not necessarily controlling, consideration. A last minute guilty plea may reflect a defendant's lack of choice in the face of evidence instead of acceptance of responsibility. *United States v. Franklin,* 902 F.2d 501, 505–506, 510 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990).

Application Note 1 to U.S.S.G. § 3E1.1 sets forth seven factors to be considered when entertaining a claim for reduction in offense level, and sentencing courts are to address those factors in deciding such a claim. *United States v. Sullivan*, 916 F.2d 417, 420–421 (7th Cir.1990). Those factors are:

a. *Voluntary termination or withdrawal from criminal conduct or associations.* Mr. Tolson can claim no voluntary withdrawal; he has been in custody since his arrest.

b. *Voluntary payment of restitution prior to adjudication of guilt.* This factor is inapplicable; no restitution is at issue.

c. *Voluntary and truthful admission to authorities of involvement in the offense and related conduct.* Mr. Tolson agreed to do this as part of his agreement, and there is no indication that he has not done so.

d. *Voluntary surrender to authorities promptly after commission of the offense.* Mr. Tolson did not do this.

e. *Voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense.* Mr. Tolson did not do this, but there is no indication that fruits and instrumentalities exist to be recovered.

f. *Voluntary resignation from the office or position held during the commission of the offense.* Mr. Tolson held no office or position from which to resign.

g. *The timeliness of the defendant's conduct in manifesting the acceptance of responsibility.* Mr. Tolson made his first court appearance on October 9, 1990 and did not come forth with his offer to plead guilty and cooperate until January 2, 1991, the day scheduled for trial. While his efforts were more timely than some, *see, e.g., United States v. Atterson*, 926 F.2d 649 (7th Cir.1991); *United States v. Fonner*, 920 F.2d 1330 (7th Cir.1990), they were more tardy than others who were denied the reduction. *United States v. Franklin*, 902 F.2d 501 (7th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990).

Mr. Tolson relies on three factors to explain the timing of his guilty plea. First, he notes that discovery was voluminous and ongoing. A long holiday weekend preceded the trial date, and his counsel received considerable additional discovery only a day or two before that weekend. The government agrees (while pointing out that it also provided considerable discovery well in advance of the times required by 18 U.S.C. § 3500 and this court's discovery order), explaining that this case is part of an ongoing investigation.

Second, Mr. Tolson's counsel approached the government shortly after indictment and asked whether any plea offers were available; the government reported that there would be no plea offers. Nothing was forthcoming from the government until the day of trial, when an offer (a poor one, perhaps) was made by the government and accepted by the defense. The government contends that in light of the "relevant conduct" provisions of the sentencing guidelines, its "offer", in which substantive charges were dismissed and virtually no other prosecutorial concessions were made, was hardly a change from its earlier stance.

Finally, Mr. Tolson notes that his posture was somewhat different from the usual defendant in that his father was among his co-defendants. He knew that if he pleaded guilty, his father's case would be substantially damaged. With both father and son in pretrial detention, Mr. Tolson was unable to speak to his father until the Thursday or Friday preceding trial, when they agreed to change their pleas with no hard feelings toward each other.

Mr. Tolson's explanations make the issue a difficult one. Determining issues of acceptance of responsibility would be easier if the guidelines gave a bright line rule, such as that the defendant must have pleaded guilty within a certain number of days before trial. Of course, such an approach would penalize a defendant for exercising his right to trial, so the guidelines could not adopt such an approach. For the

same reason, this court may not adopt such an approach on an *ad hoc* basis.

■ For an attorney to await full discovery before advising a defendant as to how to proceed is perfectly reasonable, and for a defendant to await his attorney's advice before deciding how to proceed is equally reasonable. To do so, however, does not tend to demonstrate acceptance of responsibility within the meaning of U.S.S.G. § 3E1.1: waiting to see the government's cards is not entirely consistent with clear acceptance of responsibility for the offense of conviction. Further, while the government told the defense that no deal was available, Mr. Tolson does not appear to have made any offer to the government. The court does not mean to be understood as believing that acceptance of responsibility cannot be found absent an offer by the defendant, but the existence of such a defense offer would tend to show acceptance of responsibility.

The court concludes that Mr. Tolson has not shown, by a preponderance of the evidence, that he has clearly demonstrated acceptance of responsibility for his offense of conviction. He has made some showing of acceptance of responsibility, but, in light of the timing of the events, that acceptance is less than clear. His offense level remains at 32.

### B.

No other adjustments to the offense level apply.

The parties agree that the assessment of eight criminal history points is appropriate. Three points are assessed for his 1989 Indiana felony conviction for possession of marijuana, for which he was sentenced to three years imprisonment. U.S.S.G. § 4A1.1(c). One point is assessed for his 1986 Indiana misdemeanor conviction for driving while intoxicated, for which he was fined and placed on probation. U.S.S.G. § 4A1.1(c). One point is assessed for his 1987 Mississippi felony conviction for possession of more than a kilogram of marijuana, for which he was placed on probation (and banned from the state) for five years, U.S.S.G. § 4A1.1(c); two additional points

are assessed because he was on probation on the Mississippi offense when he joined this conspiracy. U.S.S.G. § 4A1.1(d). Finally, one point is assessed for his 1976 Indiana misdemeanor conviction for assault and battery, for which he was fined. U.S.S.G. § 4A1.1(c).

Mr. Tolson has other criminal convictions, but no criminal history points may be assessed for those convictions. Accordingly, as an offender in Criminal History Category IV and at offense level 32, Mr. Tolson faces a sentencing guideline range of 168 to 210 months imprisonment. U.S.S.G. Ch. 5, Pt. A. He is ineligible for probation by statute, 18 U.S.C. § 3561(a)(1), and by guideline, U.S.S.G. § 5B1.1(b)(1). He also faces a period of supervised release of five years. U.S.S.G. § 5D1.2(a). It remains to determine whether grounds exist for departure from the guideline range.

### C.

Two factors discussed at sentencing will not affect the issue of departure or the determination of the sentence within the applicable range. Mr. Tolson maintains that because his father received a sentence of 178 months on the same charge, his sentence should be 178 months, as well. He also argues that his sentence should reflect that a principal of the conspiracy, with whom Mr. Tolson dealt, was not charged in this court.

■ Considerations not present here affected Truman Tolson's sentence. The senior Tolson argued that his role was subordinate to that of his son, whom he merely helped. Truman Tolson argued unsuccessfully for a reduction in offense level (or a departure) based on his minor role in the offense. The court found Truman Tolson's involvement sufficiently great to defeat his claim to departure or reduction in offense level, but the selection of the sentence within the guideline range reflected Truman Tolson's apparent lesser involvement.

The findings in Truman Tolson's case do not bind Darrell Tolson, who had no opportunity to be heard in his father's case. The record as developed in Darrell Tolson's

case would not warrant a finding that the father simply assisted the son, and this defendant should pay no price for the findings in another proceeding. But neither is he entitled to the benefit of the court's finding in his father's separate proceeding.

■ Mike Rector, who apparently was convicted in state court but never charged in federal court as a result of his early cooperation with federal authorities, presents a separate issue. The court rejected a similar argument in *United States v. Sergio,* 734 F.Supp. 842, 848 (N.D.Ind. 1990), and does so again here. Mr. Tolson's case is to be governed by the sentencing guidelines. The court is to depart only on the basis of matters not adequately considered by the Sentencing Commission, U.S.S.G. § 5K2.0, and the court is not convinced that the Sentencing Commission was unaware of prosecutorial discretion not to bring charges against cooperating conspirators.

### D.

U.S.S.G. § 4A1.2 limits the convictions that a sentencing court may consider in determining a defendant's guideline range. Application note 8 to that section provides, "If the government is able to show that a sentence imposed outside this time period is evidence of similar misconduct or the defendant's receipt of a substantial portion of income from criminal livelihood, the court may consider this information in determining whether to depart and sentence above the applicable guideline range." U.S.S.G. § 4A1.3 provides, in part, "If reliable information indicates that the criminal history category does not reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range."

Mr. Tolson has a rich criminal history not reflected in his criminal history category. Several of those prior convictions—visiting a house of ill fame (1971), driving while intoxicated (1973), public intoxication (1976, 1978, 1979), driving while suspended (1976),

and gambling (1976; 20 day sentence)—are not troubling.

In February, 1975, however, Mr. Tolson was convicted in this court of possession with intent to distribute marijuana. He was sentenced to three years imprisonment, with all but six months suspended, and received an early release from probation on June 9, 1977. Because the executed portion of Mr. Tolson's sentence did not exceed twelve months and sentence was imposed more than ten years before commission of this offense, no criminal history points are assessed. U.S.S.G. § 4A1.2(e). Had the executed portion of the sentence been seven months longer, the conviction would have been reflected in the criminal history category and Mr. Tolson would have faced a far different sentencing range.

Although the guidelines' failure to count a conviction which, if counted, would not affect the sentencing range is no basis for departure, *see United States v. Fonner,* 920 F.2d at 1332 ("[A] defendant's past cannot justify an increase in criminal history category exceeding the level that would have been appropriate had the facts been counted expressly."), two or three additional criminal history points would have moved Mr. Tolson from the middle of criminal history category IV into criminal history category V; a category V offender at offense level 32 faces a guideline range of 188 to 235 months imprisonment. Further, if the 1975 conviction were considered, Mr. Tolson would be deemed a career offender under U.S.S.G. § 4B1.1, requiring reference to criminal history category VI and offense level 37, requiring a sentence of 360 months to life imprisonment.

The 1975 conviction is clear evidence of similar prior misconduct not reflected in the guideline range. Further, the record discloses a pattern of this sort of misconduct: in 1975, Mr. Tolson was convicted of a federal felony of possession with intent to deliver marijuana; in 1985, he was convicted in Mississippi of conspiracy to possess more than a kilogram of marijuana; from 1986 to 1988, he participated in this conspiracy to possess and distribute mari-

juana; in 1989, he was convicted in Indiana of felony possession of marijuana. Mr. Tolson's criminal history category, however, would be the same if his Mississippi conviction had been for shoplifting. Accordingly, a strong case can be made that Mr. Tolson's criminal history category significantly under-represents the seriousness of his criminal history, warranting an upward departure. U.S.S.G. § 4A1.3.

A determination to depart upward under § 4A1.3 would not affect the length of Mr. Tolson's sentence, however. The extent of a departure under § 4A1.3 must be structured; the court cannot simply pick a number above the guideline range. *United States v. Fonner*, 920 F.2d 1330 (7th Cir. 1990). The court may not impose a sentence that would not have been permissible had the 1975 conviction been considered in determining the criminal history category. *United States v. Fonner*, 920 F.2d at 1332; *United States v. Ferra*, 900 F.2d 1057, 1063 (7th Cir.1990). The guidelines afford no direction, however, as to whether, in circumstances such as this, the court should look to the guideline range for offense level 32 and criminal history category V or the range for offense level 37 and criminal history category VI; counting the 1975 conviction would place Mr. Tolson in both ranges.

The guidelines' "career offender" provision, § 4B1.1, exists because of 28 U.S.C. § 994(h), in which Congress instructed the Sentencing Commission to ensure that career offenders—those who, among other things, have two prior convictions for felonies for offenses described in the federal Controlled Substances Act—are sentenced to terms at or near the statutory maximum. In its application notes to U.S.S.G. § 4B1.2, the Sentencing Commission stated that the time limits of § 4A1.2 govern the determination of whether an offender has two prior convictions. Whether the Commission's application of those time limits to the career offender determination is faithful to the Congressional directive may be debatable, but this is how the Commission went about its difficult task.

■ Career offender treatment, which requires sentencing at or near the statutory maximum, appears to have been carefully defined to encompass only the most serious of offenders. Although the casual observer might consider Mr. Tolson, with four marijuana-related felony convictions in sixteen years, to be a career offender, he is not a career offender within the meaning of the sentencing guidelines. To treat him as such, therefore, seems inappropriate. *See generally United States v. Delvecchio*, 920 F.2d 810, 813 (11th Cir.1991) (error to sentence defendant as if career offender simply because he came close to qualifying).

Accordingly, were the court to depart upward under U.S.S.G. § 4A1.3, the court would apply the guideline range that would apply if the 1975 conviction were counted in determining the criminal history category: 188 to 235 months.

In selecting a sentence within the range that would be reached by departure, the court would, in light of the defendant's partial acceptance of responsibility, select a sentence near the bottom quarter of the guideline range. The pattern of conduct disclosed by Mr. Tolson's criminal history would keep the court from reaching the bottom of the range. Accordingly, the court would, in the event of departure under U.S.S.G. § 4A1.3, impose a sentence of 198 to 200 months.

If no departure is made under U.S.S.G. § 4A1.3, a different point in the sentencing range would be selected. For the reasons discussed above, the 168 to 210 month range would encompass an offender without the extensive pattern of drug dealing demonstrated by Mr. Tolson. Accordingly, although Mr. Tolson's partial acceptance of responsibility would justify a sentence below the top of the range, a sentence in the upper third of the range would be necessary to reflect the nature of Mr. Tolson's criminal history. Accordingly, in the absence of departure under U.S.S.G. § 4A1.3, the court would impose a sentence of 196 to 198 months.

■ These analyses demonstrate that departure under U.S.S.G. § 4A1.3, while per-

missible in light of the record, would be irrelevant, because it would lead to precisely the same sentence.[1] Accordingly, the court declines to depart and, for the reasons set forth in the foregoing paragraph, selects a sentence of 198 months imprisonment.

Mr. Tolson is indigent, so no fine will be assessed. The special assessment and five-year period of supervised release required by statute and guidelines will be assessed.

### E.

Accordingly, pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant, Darrell Tolson, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 198 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five (5) years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the thirteen standard conditions of supervised release set forth in U.S.S.G. § 5B1.4(a), and shall comply with the following additional conditions:

(1) the defendant shall not possess a firearm or other dangerous weapon during the period of supervised release; and

(2) the defendant shall perform eight hours of community service per month as directed by the probation officer.

Because the defendant is not able and, even with the use of a reasonable install-

ment schedule, is not likely to become able to pay all or part of the fine required by the sentencing guidelines, the court imposes no fine, but imposes the foregoing requirement of community service while on supervised release as an alternative sanction pursuant to U.S.S.G. § 5E1.2(f).

It is further ordered that the defendant shall pay to the United States a special assessment of $50.00, which shall be due immediately.

---

**1.** It should also be noted that if the court had found Mr. Tolson's entitled to a two level reduction in offense level for acceptance of responsibility, a different analysis would be necessary. The sentencing ranges at issue then would have been 135 to 160 months without departure (level 30, category IV) and 151 to 188 months in the event of departure (level 30, category V).

Without departure, the court likely would impose a sentence of 160 months, the top of the guideline range, in light of the seriousness of, and pattern demonstrated by, Mr. Tolson's criminal history. Because the sentencing range al-

ready would reflect his acceptance of responsibility, nothing would offset the criminal history in selecting a sentence within the range.

With departure, the sentence still would be above the midpoint of the range, producing a sentence of approximately 175 months. A sentence above the midpoint would be appropriate in light of the near-applicability of the career offender provisions (which would have produced a sentence more than twice as long), and the absence of any need to consider acceptance of responsibility further.