985 F.2d 577
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Charles WALSH, Defendant-Appellant.
 No. 92-10118.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1992.*
Decided Jan. 25, 1993.
 
 Appeal from the United States District Court for the District of Nevada; No. CR 91-00079-ECR, Edward C. Reed, Jr. District Judge, Presiding.
 D. Nev.
 AFFIRMED AS TO CONVICTION; REMANDED FOR RESENTENCING.
 Before BOOCHEVER, NOONAN and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John Charles Walsh was convicted of violating 18 U.S.C. § 1505 by threatening to impede the collection of a tax. He appeals. We affirm his conviction but remand for resentencing.
 
 FACTS
 
 3
 Walsh failed to file his 1988 tax return. The Internal Revenue Service (IRS) pursued him until he filed it on February 25, 1991, showing a tax liability of $10,007.04. No payment was included with the return. The IRS sought to be paid, finally sending Walsh on August 7, 1991, a letter captioned "FINAL NOTICE (NOTICE OF INTENTION TO LEVY)."
 
 
 4
 The crime with which Walsh was charged occurred five days later on August 12, 1991. He telephoned the IRS automated collection office in Seattle. He spoke with Judy Johnson, a representative of the IRS, who informed him of his current tax liability. He told her that he had spent eight years in prison for murder and had just gotten out. He also said that he had broken a vertebrae in a motorcycle accident and was unemployed. Responding to the latter statement, Johnson told him that the IRS would not collect from him at that time because he did not have the funds to pay. Walsh was not mollified. He said he did not know how he was ever going to get out of the hole he was in and that the only thing he could think of was to take an Uzi to the IRS office and spray everyone in it and turn it on himself. Johnson told him that he did not really mean what he had just said. Walsh replied that if some of the pressure was not removed he would do it. He had done it before and he could do it again.
 
 PROCEEDINGS
 
 5
 Walsh was indicted for violating 18 U.S.C. § 1505, which reads in relevant part:
 
 
 6
 Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States....
 
 
 7
 Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 
 
 8
 At the trial, over Walsh's objection, a special government agent demonstrated to the jury what an Uzi was. While the trial was going on 26 people were killed in Texas by a man firing an automatic weapon. Walsh requested that the jury be polled individually as to their exposure to accounts of the massacre. The district court made a general inquiry of the jury. Several jurors replied that they had watched media accounts of the killings. The district court did not inquire further. It did offer a limiting instruction on the difference between the case before it and the Texas case.
 
 
 9
 Instructing the jury, the trial court declined to give an instruction that the jury could find Walsh guilty of a lesser included offense, namely, violation of 26 U.S.C. § 7212(a), which reads as follows:
 
 
 10
 (a) Corrupt or forcible interference.--Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.
 
 
 11
 The jury found Walsh guilty as charged.
 
 
 12
 At the sentencing hearing the district court heard testimony from Romero Jon Moench, the former prosecuting attorney of Humboldt County, California, who had prosecuted Walsh for first degree murder in 1977. The jury in that case had acquitted Walsh of first degree murder and found him guilty of second degree murder. Moench, now a municipal court judge, testified at length about the evidence he had presented at the murder trial. He concluded by testifying that Walsh was really guilty of first degree murder. The district judge in the present case stated that the prior jury verdict was not binding on him and that the evidence he had heard persuaded him "that it was a deliberate shooting of a man lying face down." He stated that this finding was based on the former prosecutor's testimony before him, notwithstanding what the jury found. Taking into account this evidence "as a factor," the district court sentenced Walsh to four years and four months, a sentence within the higher part of the guideline range.
 
 
 13
 Walsh appeals his conviction and his sentence.
 
 ANALYSIS
 
 14
 The Admission of the Uzi and the Texas Incident
 
 
 15
 Two members of the panel believe that the introduction of the Uzi was informative for the jury and not unduly prejudicial. The third member thinks the contrary. However, he concurs in affirming the conviction because there was no dispute that Walsh had uttered the threat that was in violation of the statute, and the admission of the Uzi in evidence was harmless. As to the shootout in Texas, the judge instructed the jury not to consider it, and the likelihood of its affecting the jury's verdict was remote.
 
 
 16
 The Lesser Included Offense. "In a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it, ... [is] entitled to an instruction which would permit a finding of guilt of the lesser offense." Berra v. United States, 351 U.S. 131, 134 (1956). Such an instruction is only proper, however, "where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." Sansone v. United States, 380 U.S. 343, 353 (1963) (emphasis added); see United States v. Torres, 937 F.2d 1469, 1476 (9th Cir.1991). In order for one offense to be a lesser included offense of another, the elements to be proved under the lesser offense must be a subset of the elements of the greater offense. United States v. Schmuck, 489 U.S. 705, 716 (1989).
 
 
 17
 In the present case the elements of 26 U.S.C. § 7212(a) are a subset of the elements found within 18 U.S.C. § 1505 and to prove an offense under § 1505 the government would have to prove an additional fact that it did not have to prove under § 7212, namely, that a proceeding was pending before the IRS. However, this fact was not in dispute. The defendant did not deny that there was a pending proceeding. Consequently, the district court did not err when it refused to give the requested instruction.
 
 
 18
 The Sentence. Walsh appeals his sentence, which fell within the Guideline range for his offense and which cannot be appealed unless it was within an exception stated in 18 U.S.C. § 3742(a). Walsh contends that the sentence was "contrary to law" and therefore within the exception of § 3742(a)(1). It was contrary to law, he claims, because the court considered "as a factor" that he had committed first degree murder, a crime for which he had been acquitted. The government replies that under both the statute, id., and the Guidelines, § 1B1.4, the sentencing court is permitted to take into account "all relevant information." Whether Walsh had committed first degree murder was certainly a relevant fact; the government argues that the district court acted in full accordance with law in taking this crime into account.
 
 
 19
 The law of this circuit has been established by United States v. Brady, 928 F.2d 844, 851 (9th Cir.1991). The Guidelines do not "permit a court to reconsider facts during sentencing that have been rejected by a jury's not guilty verdict." Id. The defendant in Brady had been charged with first degree murder, but the jury found him guilty of manslaughter instead. At sentencing, the court found as a fact that "Brady knowingly intended to kill both victims," even though the jury had acquitted him of first degree murder. We observed that the court's finding effectively sentenced him for murder, "in effect punishing the defendant for an offense for which he ... had been acquitted." Id. at 852.
 
 
 20
 In the instant case, the district court found as a fact that Walsh had "deliberately" shot a man lying on the ground, effectively finding him guilty of first degree murder and using that fact to enhance his sentence. The district judge in this case was not the trial judge in the murder case and so had no first hand opportunity to hear the evidence and weigh testimony. If a district judge who has heard all the testimony cannot disregard the jury verdict in sentencing as in Brady, much less can a sentencing judge who has not presided at the trial.
 
 
 21
 Because the sentencing judge "did not indicate the extent" the impermissible factor played in sentencing, we have to infer that it played some part in the court's determination. Id. at 854. Walsh had the right to appeal his sentence and, as the sentence took into account a factor impermissible under the law, the case must be remanded.
 
 
 22
 AFFIRMED AS TO CONVICTION; REMANDED FOR RESENTENCING.
 
 
 23
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:
 
 
 24
 I join the majority in upholding Walsh's conviction. However, because I believe that the district court's reconsideration of the facts surrounding Walsh's prior conviction was lawful, I respectfully dissent from the majority's disposition of the sentencing issue.
 
 Sentencing Guidelines § 1B1.4 states:
 
 25
 In determining the sentence to impose within the guideline range, ... the court may consider, without limitation, any information concerning the background, character and conduct of the defendant unless otherwise prohibited.
 
 
 26
 It is well-settled that the court may consider conduct that was illegal but for which the defendant was never charged or convicted. See, e.g., United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc). Moreover, it is clear that the government does not have to prove the existence of a fact beyond a reasonable doubt before the court may consider it in sentencing. Id. at 660. Thus, it follows that a judge may consider conduct for which the defendant was acquitted in determining where within the Guidelines range the particular sentence should fall. "A verdict of 'not guilty' does not mean that the defendant didn't do it; it means that the prosecution failed to establish culpability beyond a reasonable doubt.... And the standard of proof at sentencing is a preponderance of the evidence...." United States v. Fonner, 920 F.2d 1330, 1332-33 (7th Cir.1990).
 
 
 27
 In United States v. Brady, 928 F.2d 844, 851-52 (9th Cir.1991), this court concluded that a court may not consider conduct for which the defendant was acquitted in deciding whether to upwardly depart from the Guidelines range. After a jury trial, Brady was acquitted of second-degree murder and convicted of the lesser-included offense of voluntary manslaughter. The two offenses differ in only one respect: second-degree murder requires proof of intent to kill, while voluntary manslaughter does not. Calculating the offense level on the basis of voluntary manslaughter yielded a Guidelines range of 51 to 63 months. The district court departed upward from the Guidelines and sentenced Brady to 180 months. The court stated that it departed from the Guidelines range in part because it found that Brady had intended to kill, a fact that the jury had necessarily rejected. Id.
 
 
 28
 We rejected this approach, concluding that allowing the judge to base a sentence on a finding that Brady intended to kill would subvert the role of the jury. "[T]he sentencing court effectively sentenced Brady for second degree murder and assault with intent to commit murder--not the crime for which he was convicted, voluntary manslaughter and assault with a deadly weapon." Id. at 851. We emphasized the district court's obligation to adhere to the Guidelines:
 
 
 29
 The Guidelines recognize that voluntary manslaughter is to be punished less severely than murder by setting a lower base offense level for voluntary manslaughter than for murder. A sentencing court should not be allowed to circumvent this statutory directive by making a finding of fact--under any standard of proof--that the jury has necessarily rejected by its judgment of acquittal.
 
 
 30
 Id. Thus, Brady creates an exception to the general rule that a judge may consider any facts in sentencing--including facts which have not been proven beyond a reasonable doubt--for situations in which consideration of the fact would have the effect of undermining the role of the jury and punishing the defendant for a crime other than that for which he was convicted.
 
 
 31
 In my view, the rationale in Brady is limited to cases in which a sentencing judge relied on facts rejected by a jury as the basis of an upward departure from the Guidelines range. It is only when the sentence departs from the Guidelines range that the judge can be seen as undermining the role of the jury by " 'reconsider[ing]' critical elements of the offense to avoid the restrictions of the Guidelines." Id. at 851. Where, as here, the sentence is within the Guidelines range, the sentence imposed is entirely consistent with the jury's verdict. It is clear that Walsh, unlike Brady, was sentenced only for the crime for which he was convicted when he received a term in the middle of the Guidelines range.
 
 
 32
 Even if it were unclear whether Brady applied outside the departure context, there would be good reason to read Brady narrowly. Brady disregards the reasoning in United States v. Atkins, 480 F.2d 1223, 1224 (9th Cir.1973), a pre-Guidelines case that held that a sentencing judge may properly consider conduct underlying a prior acquittal in an unrelated case in determining the defendant's sentence. Moreover, Brady conflicts with the law of every other circuit that has considered whether facts underlying a charge for which the defendant was acquitted can be reconsidered by the district court for purposes of sentencing. Compare United States v. Fonner, 920 F.2d 1330, 1332-32 (7th Cir.1990); United States v. Rodriguez-Gonzalez, 899 F.2d 177, 180-81 (2d Cir.), cert. denied, 111 S.Ct. 127 (1990); United States v. Dawn, 897 F.2d 1444, 1449-50 (8th Cir.1990); United States v. Mocciola, 981 F.2d 13, 16-17 (1st Cir.1989); United States v. Isom, 886 F.2d 736 (4th Cir.1989); United States v. Ryan, 866 F.2d 604, 608-09 (3d Cir.1989); United States v. Juarez-Ortega, 866 F.2d 747, 749 (5th Cir.1989) with Brady, 928 F.2d at 851-52. The majority's broad reading of Brady accentuates Brady 's departure from Ninth Circuit precedent and widens the gulf between position of the Ninth Circuit and that of all others.
 
 
 33
 I would hold that the district court acted lawfully in imposing Walsh's sentence, and I must therefore respectfully dissent.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3