**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald ALTIER, Defendant–Appellant.**

No. 95–4051.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1996.

Decided July 31, 1996.

954

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Clark W. Holesinger (argued), Gary S. German, Portage, IN, for Defendant–Appellant.

Before FLAUM, RIPPLE, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Gerald Altier participated in a scheme to collect insurance proceeds by attempting to burn down a failing automobile dealership that he owned in part. The day before his trial was scheduled to begin, Altier pled guilty to Count One of the indictment, which charged him with racketeering, in violation of 18 U.S.C. § 1962(c). At Altier's sentencing hearing, the district court found that Altier "knowingly" created a substantial risk of death or serious bodily injury, thereby justifying a base offense level of 24 under U.S.S.G. § 2K1.4(a)(1). The court also found that, by pleading guilty the day before trial, Altier had not "timely" accepted responsibility. The court thus refused to reduce his offense level by one under U.S.S.G. § 3E1.1(b). Altier challenges both of these findings in this appeal. We affirm.

I.

In 1989, Altier invested in the Zaragoza Oldsmobile dealership with John Zaragoza.[1] From its inception, Zaragoza Oldsmobile was seriously undercapitalized. In order to keep the dealership afloat, Altier and Zaragoza engaged in a series of frauds that formed the pattern of racketeering activity set out in Count One of the indictment.

By the end of 1990, Zaragoza Oldsmobile had accumulated over $1 million in debt. Zaragoza Oldsmobile had insurance covering fire damage up to $510,000 on the building and $250,000 on the contents of the building. In November 1990, $400,000 in business interruption insurance was added.

On December 28, 1990, Altier and others attempted to destroy by fire the Zaragoza Oldsmobile building. During that month, cars that codefendant Jackie Steele[2] kept at Zaragoza Oldsmobile were invoiced or cosigned to Zaragoza Oldsmobile to bring them under Zaragoza Oldsmobile's insurance. On December 26, 1990, Altier and others moved nearly every car on the lot at Zaragoza Oldsmobile inside the dealership's service area, including all the cars belonging to Steele. In the early morning hours of December 28, 1990, approximately 35 gallons of gasoline were poured throughout Zaragoza Oldsmobile including in and around the vehicles and office area. Two road flares were then thrown into the dealership's building. The gasoline did not ignite because there was actually too much gasoline for combustion. If the building had ignited, a tremendous explosion would have been produced.

On September 17, 1993, a federal grand jury indicted Altier, Zaragoza, and Steele. Count One of the indictment charged that Altier, Zaragoza, and Steele conducted the affairs of Zaragoza Oldsmobile through a pattern of racketeering activity including mail, wire, and bank fraud; arson; and interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1962(c). The other counts in

---

1. The facts are drawn from the presentence investigation report and are undisputed by the parties to this appeal.

2. Neither party clarifies Steele's connection to Altier and Zaragoza. The indictment charges

that Steele assisted in various fraudulent schemes to help keep Zaragoza Oldsmobile afloat, but it fails to shed light on why he became involved in the first place.

the 22–count indictment charged one or more of the three with numerous other violations.

The district court scheduled the trial for February 14, 1994. The court held a final pretrial conference on February 3, 1994. The parties filed proposed jury instructions and voir dire questions. Codefendant Zaragoza pled guilty to Count One pursuant to a plea agreement on February 9, 1994. The trial was reset to February 16, 1994. On February 15, 1994, the day before his trial was scheduled to begin, Altier pled guilty to Count One pursuant to a plea agreement. In his change of plea petition, Altier admitted that he had tried to burn down the Zaragoza Oldsmobile dealership. The government agreed to dismiss the remaining counts against Altier. Altier's sentencing hearing was set for May 5, 1994.[3]

At Altier's sentencing hearing, Altier's attorney argued that refusing to grant Altier a one-level reduction for timely acceptance of responsibility under § 3E1.1(b) would infringe upon Altier's Sixth Amendment right to counsel. In support of this claim, Altier testified that he and his attorney received a significant amount of discovery materials from the government about three to five days prior to when his trial was to begin. He further testified that this was the first opportunity that he had to review these materials along with his attorney.

In addition, Altier's attorney argued at the hearing that Altier was entitled to a base offense level of 20 rather than 24. Altier's attorney admitted that, by attempting to burn down the Zaragoza Oldsmobile dealership, Altier created a substantial risk of death or serious bodily injury, thus justifying a base offense level of 20 under § 2K1.4(a)(2). However, he maintained that Altier did not "knowingly" create such a risk and thus earn a base offense level of 24 under § 2K1.4(a)(1).

The district court found that Altier "knowingly" created a substantial risk of death or serious bodily injury based on the fact that he used 35 gallons of gasoline in an attempt to set fire to a large commercial building in an urban area. The court concluded that the appropriate base offense level was 24 under § 2K1.4(a)(1). Noting that the government had to prepare for trial, the court also found that Altier did not "timely" notify authorities of his intention to plead guilty. Although the court granted Altier a two-level reduction for acceptance of responsibility under § 3E1.1(a), it concluded that Altier was not entitled to an additional one-level reduction under § 3E1.1(b). The court sentenced Altier to 41 months' imprisonment. Altier now appeals his sentence.

## II.

Altier raises two issues in this appeal: (1) whether the district court erred in finding that Altier "knowingly" created a substantial risk of death or serious bodily injury when he attempted to set fire to the Zaragoza Oldsmobile dealership, and (2) whether the district court erred in finding that Altier did not accept responsibility in a "timely" fashion in order to qualify for an additional one-level reduction in his offense level under § 3E1.1(b).

■ On appeal, a sentencing court's findings of fact will not be disturbed unless they are clearly erroneous. *United States v. Tolson,* 988 F.2d 1494, 1497 (7th Cir.1993); *United States v. Golden,* 954 F.2d 1413, 1416 (7th Cir.1992). As for Altier's claim that his Sixth Amendment right to effective assistance of counsel was violated by the decision not to award a reduction under § 3E1.1(b), that is a question of law that we review *de novo. See United States v. Boyer,* 931 F.2d 1201, 1203–04 (7th Cir.) (questions of law with regard to sentencing are reviewed *de novo*), *cert. denied,* 502 U.S. 873, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991).

## A.

Pursuant to § 2E1.1 level, the district court determined Altier's base offense level by reference to the underlying racketeering activity. Because there was more than one

---

**3.** Steele's trial was continued until late February. At Steele's trial, Altier testified as a government witness, and Steele was convicted.

such activity in this case, the court relied on that activity that yielded the greatest offense level, which in this case was the attempted arson. The guideline section relating to arson, § 2K1.4, provides in part:

(a) Base Offense Level (Apply the Greatest):

   (1) **24**, if the offense ... created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly ...

   (2) **20**, if the offense ... created a substantial risk of death or serious bodily injury to any person other than a participant in the offense....

Altier maintains that his case did not warrant a base offense level of 24 because he did not "knowingly" create a substantial risk of death or serious bodily injury and that it was clear error for the district court to find that he did.[4]

Altier begins by arguing that, for the purposes of § 2K1.4(a)(1), the term "knowingly" should be understood to mean "purposefully." He then argues that all the evidence showed that his purpose in torching the Zaragoza Oldsmobile dealership was to destroy property rather than to kill or seriously injure someone. He contends that, because his purpose was not to kill or cause bodily injury, he therefore did not "knowingly" create a substantial risk of death or serious bodily injury.

The government rejects Altier's attempt to equate "knowingly" with "purposefully" and insists that the only issue with respect to § 2K1.4(a)(1) is the state of the defendant's knowledge. The government argues that the circumstances of this case provided ample evidence from which the district court could infer that Altier "knowingly" created a substantial risk of death or serious bodily injury. The government points to the fact that Altier and others poured 35 gallons of gasoline into the Zaragoza Oldsmobile dealership; that the dealership was packed with cars whose gas tanks were full of gasoline; and that Altier

admitted that, if the gasoline had ignited, it would have produced a tremendous explosion. We agree with the government's position.

First, the cases relied on by Altier fail to support his premise that "knowingly" should be equated with "purposefully." Altier relies on a passage from *United States v. Bader*, 956 F.2d 708 (7th Cir.1992), in which this court clarified the term "knowingly" in § 2K1.4(a)(1). The court explained that to do something "knowingly" requires "actual consciousness," and that even if the defendant "should have known" that his conduct would create a substantial risk of death or serious bodily injury, that would not satisfy § 2K1.4(a)(1). In making this distinction, the court noted that " 'knowledge' is a cousin to 'purpose' [in that] both concepts exclude 'should have known but didn't [know].' " *Id.* at 710. Thus, while the court noted a certain way in which "knowledge" is akin to "purpose," the court by no means equated the two. On the contrary, the court stated that "[n]othing in the guidelines implies that the [Sentencing] Commission used 'knowingly' in a special sense; we conclude, then, that it has the usual meaning." *Id.*

Altier also cites *United States v. Pazos*, 24 F.3d 660 (5th Cir.1994). He interprets the Fifth Circuit in *Pazos* as suggesting that the intention of the perpetrators in setting a fire (that is, whether their intention was simply to destroy property or to injure people as well) is virtually dispositive on the question of whether the perpetrators acted "knowingly" for purposes of § 2K1.4(a)(1). However, the issue on appeal in *Pazos* was simply whether the defendant's actions created a substantial risk of death or serious bodily injury. The district court in *Pazos* found that they did not, and the Fifth Circuit affirmed that finding. The issue of whether the defendant *knowingly* created such a risk did not arise. *See id.* at 665 ("[T]he district court made an implied finding that the fire did not create a substantial risk of death or serious bodily injury. The Government has

---

**4.** Altier's attorney suggested at oral argument that the district court failed to appreciate the distinction between "knowingly" creating a substantial risk of death or serious bodily injury and

"recklessly" creating such a risk. Based on our reading of the sentencing transcript, we conclude that the district court understood the appropriate standard under § 2K1.4(a)(1).

failed to show why this finding is clearly erroneous.").

Not only does the case law fail to support Altier's position that "knowingly" means "purposefully," but also the standard definitions of those terms belie Altier's position. The Model Penal Code, for example, distinguishes between acts done "purposely" and those done "knowingly." The Code states:

A person acts purposely with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or believes or hopes that they exist.

Model Penal Code § 2.02(a) (1985). In contrast, the Code provides:

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

*Id.* at § 2.02(b). The Code illustrates the modern tendency in criminal law to distinguish between knowledge and purpose. W. LaFave & A. Scott, *Criminal Law* § 3.5(b) at 218 & n. 8 (1986).

Because Altier fails to cite any case law that supports his attempt to equate "knowingly" and "purposefully," and because the modern tendency is to distinguish the two concepts, we reject Altier's position that the concepts are the same for the purposes of § 2K1.4(a)(1).

■ Most of Altier's argument focuses on his attempt to link "knowingly" with "purposefully" and to argue that he did not act "purposefully." However, in making this argument, he notes an alleged lack of evidence that might also suggest that he did not act "knowingly" in the more conventional sense. He states that

[e]ven though the dealership was in an urban area, there still were no occupied buildings in the vicinity of the dealership. There is no evidence to suggest that Altier considered that firefighters would respond and what professional actions they would take, if any. There is no evidence to suggest that Altier had any concept of what the nature and extent of the damage might have been had the dealership actually caught on fire and/or exploded.

We do not believe that Altier's interpretation of the evidence is entirely accurate or to the point. Although there is no evidence that *occupied buildings were near the dealership,* the district court concluded that Altier's actions endangered, not neighbors, but rather the firefighters who surely would have come to put out the massive fire that would have engulfed the Zaragoza Oldsmobile dealership if the gasoline had caught on fire. And though there is no *direct* evidence that Altier gave any thought to the possibility that firefighters might respond to a fire at the dealership, it was eminently reasonable for the district court to infer that Altier knew they would have responded if the fire had actually started. This is so because (1) Altier and others doused the dealership, which was brimming with cars, with 35 gallons of gasoline and threw two road flares into the building, (2) Altier conceded that *if the building* had caught on fire, the explosion would have been tremendous, and (3) the dealership was located in an urban area. Under these circumstances, it was by no means unreasonable for the district court to conclude that Altier knew that the fire would have been huge, that firefighters would have responded, and that they would have faced serious danger fighting the blaze. *See United States v. Honeycutt,* 8 F.3d 785, 787 (11th Cir.1993) (holding that district court did not commit clear error in finding that defendant acted "knowingly" under similar circumstances), *cert. denied,* —— U.S. ——, 114 S.Ct. 1414, 128 L.Ed.2d 85 (1994).

We conclude that the district court did not commit clear error by finding that Altier

knowingly created a substantial risk of death or serious bodily injury.

### B.

Section 3E1.1 (Acceptance of Responsibility) provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

By pleading guilty prior to trial and admitting the conduct underlying his conviction, Altier was able to convince the district court that he had accepted responsibility for his offense. The district court rewarded Altier with a two-level reduction in his offense level under § 3E1.1(a). However, by waiting until the day before trial, Altier was not able to persuade the district court to award him an additional one-level reduction in his offense level under § 3E1.1(b) for "timely notifying authorities of his intention to enter a plea of guilty."

■ Altier's main contention is that, in order to effectively exercise his Sixth Amendment right to counsel, he had to wait until he received all discovery materials from the government and was able to go over them with his attorney. He claims the district court's finding that he did not "timely" provide notice to the authorities of his intention to plead guilty effectively penalized him for exercising his Sixth Amendment right to counsel.

Citing *United States v. Tolson*, 988 F.2d 1494 (7th Cir.1993), the government contends that we have already rejected the argument that the timeliness requirement for acceptance of responsibility violates the Sixth Amendment. In *Tolson*, Truman and Darrell Tolson pled guilty on the morning of trial to drug conspiracy and possession charges. *Id.* at 1494 & 1497. They argued to the district court that the lateness of their pleas was caused by the government's failure to disclose important discovery material until just before trial. As a result, they maintained they were unable to evaluate at an earlier stage the strength of the government's case. The district court reasoned that the Tolsons' decision to wait until such time as their attorneys could provide advice based on full discovery was perfectly reasonable. The court noted, however, that such a decision does not tend to demonstrate acceptance of responsibility. The court stated that "waiting to see the government's cards [before entering a guilty plea] is not entirely consistent with clear acceptance of responsibility." *United States v. Tolson*, 760 F.Supp. 1332, 1335 (N.D.Ind.1991). Concluding that their guilty pleas were not timely, the district court refused to award either defendant any reduction for acceptance of responsibility, not even the two-level reduction under § 3E1.1(a). On appeal, we found the district court's reasoning persuasive and affirmed. *Tolson*, 988 F.2d at 1498.

We agree with the government that Altier's Sixth Amendment argument has effectively been resolved by *Tolson*. The facts relating to the timing of the Tolsons' guilty pleas parallel the facts relating to the timing of Altier's guilty plea, and hence the reasoning that we found persuasive in *Tolson* applies with equal force to this case. We conclude that, in accordance with *Tolson*, the district court's refusal to award Altier an additional one-level reduction for "timely" acceptance of responsibility did not violate Altier's Sixth Amendment right to effective assistance of counsel.

Apart from the Sixth Amendment issue, Altier appears to argue that the district

court's finding that his guilty plea was not "timely" was clearly erroneous on the particular facts of his case. He argues that his guilty plea on the eve of trial did not result in unnecessary trial preparation on the government's part because the government still had to proceed to trial against codefendant Steele. However, as the government points out, many more counts in the indictment applied to Altier than to Steele, who was ultimately tried on only five counts. Thus, much of the government's preparation relating to Altier was in fact unnecessary. Previously, we have affirmed a district court's decision not to award a § 3E1.1(b) reduction where the defendant pled guilty as much as one week before trial. *United States v. Francis*, 39 F.3d 803, 807–08 (7th Cir.1994). Here, Altier pled guilty just one day before trial, by which time the district court had held a final pretrial conference and the government had filed its proposed jury instructions and voir dire questions. The timing of Altier's plea compelled the government to prepare for trial and impeded the court's efforts to allocate its resources efficiently. We conclude that the district court did not clearly err by finding that Altier did not "timely" plead guilty.

For the foregoing reasons, we AFFIRM Altier's sentence.